MARTHA C. ARMSTRONG et al., Appellants, *v.* HENRY DuBois et al., Respondents.

The rule that an appellate court will presume in support of a judgment in an action tried by the court or referee, that material facts appearing in the case, not embraced in the express findings, were found and considered, applies only to such facts as being found would tend to support the special findings. In respect to inconsistent facts not conclusively established by the evidence, there is no such presumption.

Where, therefore, in an action of ejectment, the defendants relied upon a paper title, and this issue was found in their favor, *held*, that the judgment could not be sustained on the ground of title by adverse possession, although facts were proved tending to show such title, but which were not conclusive or incapable of contradiction, and the question did not appear to have been raised upon the trial.

Also *held*, that for the same reasons it was not open to defendants to claim upon appeal that plaintiffs showed no title to the premises.

Land cannot pass as appurtenant to land.

In an action to recover lands formerly salt meadows on Gowanus bay. Defendant claimed under a deed from G. B., who, it was conceded, owned the salt meadow at the time of the conveyance; he also owned a farm extending eastwardly from said bay, and certain wood lots lying separate from the farm, which farm and wood lots were formerly part of the farm and plantation of W. B. The deed conveyed the farm, describing it as part of the farm or plantation formerly owned by W. B., and giving the bounds thereof "as the same now lies in fence;" it also conveyed the wood lots, describing them "together with all and singular houses, barns * * * * orchards, gardens, timber trees * * * * hereditaments and appurtenances whatsoever, unto the said clear land and woodland belonging.' The salt meadow was situate about three hundred feet north of the northerly line of the cleared land described. There was no evidence that it was ever part of the farm and plantation of W. B., or that he was in possession or claimed any title thereto. *Held*, that said salt meadow was not embraced in the deed.

Concurrently with the execution of the deed, the grantee executed to the grantor a lease describing the premises by reference to the deed and adding "together with the houses, out-houses * * * woodlands, *meadows*, and all other appurtenances * * * now also in the use and occupation of the said" G. B. It was claimed that the word "meadows" was to be considered as if incorporated in the deed, and as so construed, it conveyed the salt meadows. *Held* untenable; that as the language of the deed was clear and needed no interpretation, and as it appeared that a portion of the land included in the boundaries in the deed was meadow, and the word in the lease is associated with others enumerating things

concededly part of the land conveyed, it could more reasonably be inferred that the word referred to the meadows within the limits of the granted premises.

Defendants produced in evidence a bill in chancery, filed by G. B. against his grantee, to set aside the deed, in which the complainant alleged, under oath, that the premises described in the deed comprised all the real estate of which he was seized, which was claimed to be an admission that the salt meadow was conveyed. *Held,* that it was not competent evidence to change the construction of the deed.

Where the description in a deed designates a particular piece of land, declarations of the grantor are inadmissible to show that something else was intended.

(Argued June 29, 1882; decided October 10, 1882.)

APPEAL from judgment of the General Term of the City Court of Brooklyn, which affirmed a judgment in favor of defendants, entered upon a decision of the court on trial at Special Term.

The nature of the action and the material facts are stated in the opinion.

*I. T. Marean* for appellant. Assuming that the lease covered the premises in question plaintiffs are not estopped from setting up title under George Bennet, the lessee, against the defendants who claim under Dean, the lessor. (*Jackson* v. *Whitford,* 2 Caines, 215; *Tompkins* v. *Snow,* 63 Barb. 532; *Jackson* v. *Speare,* 7 Wend. 401; *Jackson* v. *Walker,* 7 Cow. 637–644; *Brown* v. *Keller,* 32 Ill. 151–155.) Meadows not being mentioned in the description, it must be assumed it was not intended to convey any. (Broom's Legal Maxims, 584.) Land cannot pass as appurtenant to land. (*Woodhull* v. *Rosenthal,* 61 N. Y. 382; *Odgen* v. *Jennings,* 62 id. 526; *Robinson* v. *Kinne,* 70 id. 154; 1 Rev. Laws, 75, §§ 9, 10, 12; 3 R. S. [5th ed.] 220, § 6.) It is the intent manifested by the words of the instrument, and not the actual intent, which is to govern in determining what land has passed by a deed. (*Buffalo, etc.,* v. *Stigeler,* 61 N. Y. 348; *Revere* v. *Leonard,* 1 Mass. 91, 93; *Harlow* v. *Thomas,* 15 Pick. 68; 2 Wharton on Evidence, § 936, etc; 2 Phillips on Evidence [ed. of 1859], 644, n. 487; id. 755, 756, n. 516; 1 Addi-

son on Cont., §§ 221, 222 ; Tyler on Boundaries, 284.)  Except where the remedy sought is a reformation, evidence of actual intent is competent only when the search for the meaning of the language used in the instrument would be fruitless or doubtful without it. (Wharton on Cont., § 937 ; *Drew* v. *Swift*, 46 N. Y. 204; *Waugh* v. *Waugh*, 28 id. 94 ; *Lawrence* v. *Palmer*, 71 id. 607; *Clark* v. *Baird*, 9 id. 204; *Baldwin* v. *Brown*, 16 id. 359 ; *Adam* v. *Rockwell*, 16 Wend. 285 ; *Mott* v. *Richtmyer*, 57 N. Y. 49.)  The parol admissions of Bennet would not have been competent against Bennet himself, to contradict his deed, were this action between him and Dean, instead of between persons claiming under them.  (*Chadwick* v. *Fonner*, 69 N. Y. 406, 407.)  The deed from Dean to Phillip in 1829 reciting that the grantor derived his title to the lands thereby conveyed from George Bennet by a deed dated July 18, 1818, taken in connection with the deed of the meadows in question from Phillip to Dean in 1835, reciting that they were parcels of lands conveyed by the first-mentioned deed, amounts to a declaration by Dean that such meadows were owned on July 18, 1818, by George Bennet, and such declaration is good evidence of the fact against the defendants claiming under Dean. (*Jackson* v. *Denison*, 4 Wend. 558 ; *Jackson* v. *Cole*, 4 Cow. 587, 594, 595 ; *Jackson* v. *Parkhurst*, 9 Wend. 209 ; *Averill* v. *Wilson*, 4 Barb. 180 ; 2 Greenleaf on Evidence, § 307.)

*E. B. Hinsdale & Thomas E. Pearsall* for respondents. The three instruments between Bennet and Dean of July 18, 1818, are to be read together; they represent one transaction, and the language of the lease may be employed to show that what was intended to be conveyed was one-half of the old farm or plantation.  (*Mott* v. *Richtmyer*, 57 N. Y. 65 ; *Rawson* v. *Lampson*, 5 id. 456 ; *Van Horne* v. *Crain*, 1 Paige's Ch. 455 ; *Hills* v. *Miller*, 3 id. 254; *Cornell* v. *Todd*, 2 Denio, 130.) A title by adverse possession cannot be based upon the holding of a tenant.  Not until he surrenders the possession to his landlord and resumes possession adversely to him can he, by lapse of time, make out a title by adverse possession.

(*Jackson* v. *Whitford*, 2 Caines, 215; *Tompkins* v. *Snow*, 63
Barb. 525; *Jackson* v. *Walker*, 7 Cow. 636; Code, § 373.)
The bill in the chancery proceedings of 1826, being signed
and sworn to by George Bennet, was competent evidence
against him and all persons claiming under him. (*Chadwick*
v. *Fonner*, 69 N. Y. 404; *Varick* v. *Briggs*, 6 Paige's Ch.
323; *Gibney* v. *Marchay*, 34 N. Y. 301.)  In any event the
acts shown — such as cutting a little salt grass, and setting a
few stakes on which to hang fish-nets — would not make
out a case of possession sufficient to support a claim of title.
(*Wheeler* v. *Spinola*, 54 N. Y. 377; *Miller* v. *L. I. R. R. Co.*,
71 id. 380.)  As between grantor and grantee the latter is
never estopped from disputing the former's title. (*Sparrow* v.
*Kingman*, 4 N. Y. 242; *Averill* v. *Wilson*, 1 Barb. 180;
*Finn* v. *Sleight*, 8 id. 104; *Bigelow* v. *Finch*, 11 id. 498;
*Tefft* v. *Munson*, 63 id. 31.)  In ejectment, it is of no avail to
the plaintiff to point out possible flaws in the defendant's title.
A plaintiff can only succeed by showing good title in himself.
(*Thompson* v. *Burhans*, 61 N. Y. 52, 60; *Hill* v. *Draper*,
10 Barb. 458; *Brady* v. *Hennison*, 8 Bosw. 536.)

ANDREWS, Ch. J.  The action is ejectment to recover about
two acres of land in the city of Brooklyn, formerly salt
meadow on Gowanus bay.  The defendants other than the
St. Nicholas Insurance Company, are in possession, claim-
ing title under a deed from George Bennet to Joseph Dean,
dated July 18, 1818.  The St. Nicholas Insurance Company
is mortgagee, under a mortgage executed under the Dean title.
The plaintiffs claim title under the will of George Bennet, who
died in 1832, and who is the common source of the title
claimed by both parties.  It was adjudged on the trial that the
premises in question were embraced in the deed from Bennet
to Dean, and passed by that deed to the grantee.  The defend-
ants have succeeded to whatever rights were acquired by Dean,
under that conveyance, and it is conceded that if the premises
in controversy, are within the descriptive words of the grant,
the plaintiffs cannot maintain the action.  On the other hand,

if the salt meadow was not embraced within the premises specifically described, or did not pass as appurtenant thereto, the defendants are not in a position on this appeal, to assert a prescriptive, or other different title to the premises in controversy. The defendants prevailed in the action on the sole ground that the title to the salt meadow, vested in Dean under the Bennet deed. Whether they have acquired a title by adverse possession, cannot now be considered. There is evidence bearing upon that question, but there are no findings of fact upon the subject, and the question was not, so far as appears, raised upon the trial.

The rule that an appellate court will presume, in support of a judgment rendered on a trial before a court or referee, that material facts appearing in the case, not embraced in the express findings, were nevertheless found and considered by the trial court, applies only to such facts as, being found, would tend to support the special findings. The rule is based upon the reasonable intendment that all supporting facts were taken into consideration by the trial court, but it would be a perversion of the rule to apply it to inconsistent facts, not conclusively established. In respect to such facts there can be no presumption that they were found. (See *Oberlander* v. *Spiess*, 45 N. Y. 175.) The defendants relied upon a paper title, and this issue was found in their favor. The facts tending to show a title by adverse possession, were not conclusive, or incapable of contradiction. It would be inequitable for this court to affirm the judgment upon a ground so materially different from that upon which the court below proceeded, thereby depriving the plaintiffs of the opportunity to have a re-examination of the facts upon which the question of title by adverse possession depends. For the same reason it is not open to the defendants upon this appeal to claim that the plaintiffs showed no title to the demanded premises. When the plaintiffs rested their case, there was very slight, if any evidence of title in them. The facts proved for the purpose of establishing possession in the plaintiffs' ancestor, were uncertain, indefinite and equivocal, and the admission sought to be implied from the

recital in the deed from Phillip to Dean in 1835, must be taken in connection with the claim accompanying it that Bennet's title passed to Dean, under the Bennet deed. It appears from the deed from George Bennet to Winant Bennet (2nd) in 1784, of lands adjacent to the premises in controversy, that the former claimed to own the salt meadow, but George Bennet was not shown to have been in possession at that time, or indeed at any time prior to his death, unless the equivocal acts before referred to, all of which occurred subsequent to 1818, may be regarded as proving possession in them after that date. But the judgment in the case proceeded with the assumption that George Bennet, when he conveyed to Dean, had title to the salt meadow. It is conceded that if he had title, the plaintiffs acquired it under his will, unless it vested in Dean under the Bennet deed. The defendants did not choose to rest the case upon the failure of the plaintiffs to prove title from Bennet, and their motion for nonsuit having been overruled, they attempted to establish, affirmatively, title in themselves under the Dean title. The court decided this question in their favor, and the appeal must now be determined upon the assumption that the title to the salt meadow was in Bennet when the conveyance of July 18, 1818, was made. It is not impossible that other evidence in support of the title of the plaintiffs' ancestor, might have been given if the court had held on the motion for nonsuit that the evidence given was insufficient to establish it.

We come, then, to the question upon which this appeal depends, viz. : Whether the deed of July 18, 1818, from George Bennet to Dean, embraced the premises in controversy. It is a conceded fact that at the date of the deed George Bennet owned a farm extending eastwardly from Gowanus bay, and bounded northerly by land then or formerly owned by one Anthony Holst, and also certain wood lots lying separate from the farm, and that the farm and wood lots were formerly part of the farm and plantation of Winant Bennet (1st), who died in 1768, having devised the same to his sons Jacobus and Winant. It is also conceded that George Bennet derived his title

to the part of the farm and wood lots owned by him from his brother Winant (2nd), under a deed dated March 23, 1780. The description of the premises conveyed by this deed is material, because it is identical with the description in the deed from Bennet to Dean in 1818. If the salt meadow was embraced in the deed from Winant (2nd) to George Bennet, it was also embraced in the conveyance from the latter to Dean. On the other hand, if George Bennet acquired no title thereto by the deed of 1780, then we think he conveyed none by the deed of 1818. The deed of 1780 describes the premises conveyed as the one-half of the "farm or plantation" given to Jacobus and Winant Bennet by the will of their father, Winant Bennet, situate in the township of Brooklyn, and bounded as follows, viz.: "North-west upon Gowanus bay; south-east against the land of Jacob Bennet, from Gowanus bay to the foot of the hill called Long hill; north-east against the land of Cornelius Duyne, deceased, and Anthony Holst, and so along to Gowanus bay, containing about one hundred and sixty acres, more or less, as the same now lies in fence, and the following six lots of wood land (describing them), together with all and singular houses, barns, stables, outhouses, orchards, gardens, timbers, trees, woods, underwoods thereon standing, lying or growing, runs, streams, water, water-courses, ponds, pools, pits, mines, mineral quarries, hawkings, huntings, fowlings, fishings, easements, profits, commodities, privileges, hereditaments and appurtenances whatsoever unto the said clear land and woodland belonging or in any way appertaining." It is impossible, we think, to maintain that the salt meadow was embraced in this deed. The land conveyed was described by definite boundaries. The clear land conveyed was a single body of land "in fence;" the wood lots were separately and distinctly described. The salt meadow, as the evidence discloses, and as is found, is a separate and distinct parcel of land, situate about three hundred feet north of the northerly line of the clear land described in the deed. There can be no construction of the description in the deed which will include the salt meadow, but on the contrary it is necessarily excluded. It cannot be

held to have passed under the general words "farm and plantation" of Winant Bennet, for two reasons: *first*, these words are followed by an exact description of the farm and plantation intended to be conveyed, which does not include the salt meadow ; and, *second*, there is no evidence that the salt meadow was ever a part of the farm and plantation of Winant Bennet (1st), or that he was in possession, or had or claimed any title thereto.   The salt meadow did not pass under the word "appurtenances," because, as far as appears, it never was connected, either in title or use with the land described, and for the further reason that land cannot pass as appurtenant to land. (*Ogden* v. *Jennings*, 62 N. Y. 526, and cases cited.)   The amplification of the description following the words "together with" does not enlarge the premises previously described, nor does the enumeration of particulars, which were parcel of the thing granted, tend to show that it was the intention to include in the conveyance other lands than those described.

The deed of July, 1818, from Bennet to Dean, as has been said, followed the description in the deed of 1780, and the same reasons which lead to the conclusion that the salt meadow was not embraced in the latter deed, are an answer also to the claim that it was embraced in the deed of 1818.   There are, however, two facts upon which the defendants rely for a broader interpretation of the deed from Bennet to Dean, and as showing an intention to include the salt meadow in the grant.   Concurrently with the execution of the deed to Dean, the latter executed a mortgage to Bennet on the same premises, following the description in the deed, to secure the payment of $3,750 to the heirs, or other legal representatives of Bennet, on his decease, without interest, and also a lease for the lives of Bennet and his wife, at a nominal rent of the same premises, but described by reference simply to the deed from Bennet to the lessor, adding, "together with the houses, outhouses, barns, stables, orchards, trees, woods, woodlands, *meadows* and all other appurtenances to the same belonging and appertaining and now also in the use and occupation of the

said George Bennet." The rule that instruments executed at the same time, between the same parties, and relating to the same subject-matter, may be read together as constituting one transaction, is sought to be applied in this case, and it is claimed that the word "meadows" in the lease, is to be read as if incorporated into the deed, and that so construed, the intention to grant the salt meadow is established. But there are several difficulties in the way of this position. The language of the deed is clear, and needs no interpretation. The deed is susceptible of no construction which will carry the premises in controversy. The meadows mentioned in the lease are not located or defined in any way. It is found by the court that a portion of the land included in the boundaries in the deed was meadow land. The word "meadows" in the lease, is associated with other enumerated things, which concededly are part of the land conveyed, such as "houses, orchards, trees, woods, etc.," and may more reasonably be held to refer to meadows within the limits of the granted and described premises, than to the salt meadow, which is not described in the deed. The things mentioned are further described in the lease, as in the use and occupation of Bennet, and there is no evidence that the salt meadow was in his use and occupation when the lease was executed. The lease is susceptible of a reasonable construction which will exclude the premises in controversy, and the deed is not susceptible of a construction which will include them. We think the grant cannot be enlarged by importing into it, upon mere conjecture, lands not included within its descriptive clauses.

The defendants produced in evidence a bill in chancery, filed by Bennet against Dean, in 1826, to set aside the deed of July 18, 1818, in which the complaint alleged under oath that the premises described in the deed comprised all the real estate of which the complainant was seized, or to which he was in any way entitled. It is claimed that this was in substance an admission that the salt meadow was intended to be embraced in the deed. It will be observed that the allegation referred to was immaterial to the suit, and the admis-

sion was at most inferential and argumentative. But conceding that the allegation is to have the broadest meaning, it was not competent evidence to change the construction of the deed. It was at most a declaration of the grantor that he intended to convey the salt meadow, and that it was included in his grant. When the description in a deed designates a particular piece of land, the description cannot be departed from by a parol evidence of intent, and declarations of the grantor are inadmissible to show that something else was intended to be conveyed. (*Tymason* v. *Bates,* 14 Wend. 675 ; *Cornell* v. *Todd,* 2 Denio, 130 ; *Clark* v. *Baird,* 9 N. Y. 183 ; *Drew* v. *Swift,* 46 id. 204.) We think the judgment was based upon an erroneous construction of the deed of July 18, 1818, and that it should be reversed, and a new trial awarded on which the other questions in the case can be determined. The judgment should be reversed, and a new trial ordered, with costs to abide the event.

All concur, except MILLER and TRACY, JJ., who do not vote.

Judgment reversed.