THOMAS J. REYNOLDS, APPELLANT, *v.* THOMAS ROBIN-
SON AND OTHERS, RESPONDENTS.

*Evidence — when oral testimony will not be admitted to contradict a written agreement.*

Upon the trial of this action, brought to recover damages for a breach of a con-
tract alleged to have been made by the defendants to sell lumber to the plaintiff,
the referee found that the agreement was made in writing by letters passing
between the parties, by the terms of which the plaintiff was to pay for the
amount of lumber delivered each month on or before the twentieth day of the
following month. Upon the trial the referee received oral testimony tending
to show that before the letters were written it was agreed that the defendants
should make inquiries at the commercial agencies as to the plaintiff's pecuni-
ary responsibility, and that the sale and delivery of the lumber should be con-
tingent upon a satisfactory report from the agencies; that such report was
unsatisfactory, and that the defendants for that reason refused to fulfill the
contract.

*Held,* that this oral evidence was inadmissible for the reason that it contradicted
specific provisions of the written agreement.

APPEAL by the plaintiff from a judgment, entered upon the report
of a referee.

The action was brought to recover damages alleged to have arisen
out of a breach of contract, alleged to have been made by the
defendants, to sell to the plaintiff a quantity of lumber on credit,
and which they afterwards refused to do except for cash. The
complaint was dismissed on the merits.

*E. A. Nash,* for the appellant.

*Tracy C. Becker,* for the respondents.

BRADLEY, J.:

The contract was contained in a written correspondence between
the parties. The first letter was from the plaintiff of date June
17, 1882, and contained inquiry for the price at which the defendants
would deliver to him on the cars at Buffalo a described quantity of
white oak timber. The defendants answered by letter of twenty-
second June, twenty-five dollars per one thousand feet. The letter
of plaintiff followed of date twenty-eighth June offering to pay
twenty-four dollars per one thousand feet, and to pay for each

months delivery on or before the twentieth of the month following. Thereupon, the defendants, by letter of twenty-eighth of June, say "we will accept your order and enter the same as originally given," etc. And by letter of July first, the plaintiff acknowledged receipt of such acceptance of order. On July third the defendants sent the plaintiff another letter acknowledging the receipt of his letter of July first, and saying that they declined to fill his order except for cash, and add, "we can follow but one rule, and your commercial standing is such that we cannot sell on time, and we therefore decline to fill the order."

The defendants gave evidence tending to prove that prior to the commencement of the written correspondence, at an interview with plaintiff at their office in Buffalo, the plaintiff said he wanted a bill of timber and asked their price and terms, and was advised that their terms were sixty days credit to responsible parties; that he said as to his responsibility they could refer to the commercial agencies and that if the report was right they could fill his order if he sent it up; that they informed him that they got their reports through Bradstreet's and Dunn's agencies, and that if they received a satisfactory report they would furnish the lumber, otherwise not. That they consulted those agencies, and intermediate their letters of twenty-eighth June and third July the defendants received from them reports to the effect that the plaintiff's financial condition and standing were not good and that consequently they were not satisfactory to the defendants. And thereupon their declination to give him credit of which he was advised by such letter. The referee found that outside of the correspondence it was part of the agreement between the parties that the defendants should ascertain the pecuniary standing of the plaintiff at the commercial agencies of Dunn & Co. and Bradstreet, or one of them, and that "the sale and delivery of said timber and lumber was contingent upon a satisfactory report from said agencies to said defendants, of plaintiff's pecuniary responsibility;" that they made such inquiries and received answers that his responsibility was not good, and thereupon wrote the letter of the third July. And that the defendants did not deliver the lumber, and that "by reason of the unsatisfactory report of said commercial agencies, the defendants were not bound to deliver said lumber and timber."

The evidence offered, to prove the conversation in respect to the procurement of the reports of his financial condition and as to the effect it might have upon the agreement to sell to the plaintiff on credit, was objected to in due time and exceptions were taken to the reception of it on the ground that the contract was in writing and the evidence was not competent to vary or contradict its terms. And exceptions were also taken to the findings of the referee in respect to the fact and the effect of it furnished by such evidence. The referee has found that the agreement between the parties was entered into in writing by the correspondence, and has supported his conclusion by and upon the fact that the oral understanding in respect to the ascertainment of the plaintiff's financial condition and the result of it, qualified its effect. So that it is unnecessary to inquire here whether there were any, and what other considerations involved, upon which the referee may have reached the same result, because it cannot now be said what views he entertained in respect to other facts upon which he has made no express finding. (*Armstrong* v. *Du Bois*, 90 N. Y., 95.)

We are now required to assume that the agreement produced by the written correspondence was that the defendants would sell and deliver the timber to the plaintiff at twenty-four dollars per one thousand feet, and upon a credit for that delivered in any one month until the twentieth day of the month following. But we do not intend to express any opinion upon the construction and effect which may be given to those letters further than that they furnish evidence and support the finding of the referee that such agreement was made for the sale and delivery of the timber. The question here is whether the preliminary oral understanding, as claimed by the defendants, was properly received in evidence and considered by the referee. The general rule is that parol evidence cannot be received or used to contradict or vary the terms of a written instrument, and that when an agreement is reduced to writing it is taken to express the ultimate sense of the parties to it, and therefore in the absence of fraud parol evidence is not admissible to alter or modify the terms or legal effect of a written contract as between the parties entering into it. But there are exceptions to this rule which permit parol evidence of engagements collateral to, or independent of the provisions expressed in the written agreement

and not within its terms, although made at the same time and affecting the rights of the parties in relation to the subject-matter of the written contract. In such case it is deemed only partially reduced to writing, and the collateral undertakings exist in parol. (*Chapin* v. *Dobson*, 78 N. Y., 74; *Van Brunt* v. *Day*, 81 id., 251; *Juilliard* v. *Chaffee*, 92 id., 529; *Lewis* v. *Seabury*, 74 id., 409; *Shughart* v. *Moore*, 78 Penn. St., 469; *Welz* v. *Rhodius*, 87 Ind., 1; 44 Am. R., 747; *Lindley* v. *Lacey*, 17 C. B. [N. S.], 578.)

The written agreement in this case contains a stipulation for a specific credit, and the parol evidence upon which the conclusion of the referee rested, was to the effect that such provision was dependent upon the condition that a report derived from the commercial agencies was or should be satisfactory to the defendants in respect to the financial character of the plaintiff. That was in no sense a collateral or independent agreement, but tended directly to impair the force of a provision introduced into the written contract, and to prove that, instead of being an absolute undertaking as its terms imported, it was a qualified or conditional one, and that by reason of a reserved right the fact existed which defeated it. That proposition is in violation of the well established rule, and in its application generally salutary one, which preserves the force and effect of written contracts against the uncertain consequences of parol evidence upon their plain provisions. (*Payne* v. *Ladue*, 1 Hill, 116; *Bank of Albion* v. *Smith*, 27 Barb., 489; *Van Bokkelen* v. *Taylor*, 62 N. Y., 105; *Hill* v. *S. B. and N. Y. R. R. Co.*, 73 id., 351; *Wilson* v. *Deen*, 74 id., 531.) It may be that the defendants intended that the condition referred to should be carried through and characterize their correspondence, and thus qualify the acceptance of the plaintiff's proposition, but if they designed to preserve the qualification they should have done so by the terms of their acceptance of his order. The letter contains nothing from which it may be implied. The distinction to be observed between the rule and the exception, and the circumstances which may furnish the opportunity to apply the latter are well stated in *Eighmie* v. *Taylor* (98 N. Y., 294). The parol evidence was not admissible to vary or modify the terms of the written contract. And the defendant's exception was well taken. There is no other question requiring consideration.

The judgment should be reversed and a new trial granted, costs to abide event.

SMITH, P. J., and BARKER, J., concurred.

Judgment reversed and new trial ordered, costs to abide event.