JOHN LEWIS PUTNAM and MARIE G. PUTNAM, his Wife, Appellants, v. JOHN R. PUTNAM and Others, Respondents.

*Land set off in a partition suit " as appurtenant" to each of two other lots — rights of the owners of such two lots therein — the right passes under a mortgage of a lot " together with the appurtenances."*

In 1875, when an action was brought to partition lands in the village of Saratoga Springs which were owned by the heirs of Lewis Putnam as tenants in common, a certain strip of land formed the outlet to the street of what was known as the Putnam homestead lot and also formed a means of access to the rear of what was known as the William Putnam house. The commissioners appointed in the action set off the homestead lot, which was known as lot No. 10, to Jennie L. Putnam and the William Putnam house, which was known as lot No. 8, to John L. Putnam, and in their report disposed of the strip before mentioned as follows : " We have also set off in common to defendants John L. Putnam and Jennie L. Putnam as appurtenant to the lot known as the William Putnam House and marked No. 8 on the annexed maps, and the premises last above described as the ' Homestead ' and Marked No. 10 on the annexed maps."

*Held*, that the commissioners did not intend to set off the strip in question to John L. Putnam and Jennie L. Putnam as tenants in common, but that it was their intention to give each of such persons and their grantees a common right of usage in the strip as an entirety, and that neither of them had power to force a division of the strip or to exclude the other owner from any portion thereof;

That a mortgage executed by John L. Putnam upon lot No. 8 " together with the appurtenances " included the mortgagor's rights in the strip of land in question.

APPEAL by the plaintiffs, John Lewis Putnam and another, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Saratoga on the 30th day of January, 1902, upon the decision of the court, rendered

after a trial at the Saratoga Special Term, dismissing the complaint upon the merits.

*Winsor B. French,* for the appellants.

*Charles S. Lester,* for the respondents Goldsmith and Lester.

*Otto C. Wierum, Jr.,* for the respondents Robert M. S. and Cornelia B. Putnam.

KELLOGG, J.:

This appeal involves the interpretation of a grant by way of mortgage and what was intended to be passed to the mortgagee under the words of the grant, " together with the appurtenances."

The action is brought to partition an irregular strip of land in the village of Saratoga Springs. As appears by the map the strip fronts on a street fourteen feet and extends back about eighty feet, then extends at right angles westerly about forty feet with a width of about twenty-five feet. Its northerly end is bounded by what was known as the Putnam homestead, and formed the outlet of that homestead lot to the street; on the west and south by what was known as the William Putnam house, and was used as a means of access to the rear of that house. This was so in 1875 when the whole premises were owned in common by the heirs of Lewis Putnam. In 1875, in an action in partition between the heirs, the lands were divided by commissioners and their report confirmed June 22, 1875. By the commissioners the homestead lot, on the map marked No. 10, was set off to Jennie Putnam, and the William Putnam house, marked on the map as lot No. 8, was set off to plaintiff John L. Putnam, and the strip sought to be partitioned in this action was disposed of by the commissioners as follows: " We have also set off in common to defendants John L. Putnam and Jennie L. Putnam as appurtenant to the lot known as the William Putnam House and marked No. 8 on the annexed maps, and the premises last above described as the ' Homestead ' and Marked No. 10 on the annexed maps," and here follows the description of the beforementioned strip. This disposition of this strip was confirmed by the court.

Considering the location of lots 8 and 10 and their uses at the time of partition, and considering also the then uses of this strip

solely to serve the needs of the two lots, and the probable deprecia-
tion in their value without the strip, it is not difficult to attach the
meaning of the commissioners and the court to the words used, " as
appurtenant to the lot," etc. Without doubt it was meant that the
owners of the lots should forever have a common right of usage
in the strip as an entirety, that there could, therefore, be no forced
division at the instance of any owner, and no power of exclusion
of either owner from the use of any portion of the strip. If the
commissioners or court simply meant to set off this strip to John L.
Putnam and Jennie Putnam, as tenants in common, there would
have been no use in setting it off " as appurtenant to the lot," etc.

This judgment of the court must be accepted and construed as
would be like terms appearing in a deed of conveyance. Had the
owner of the two lots and the strip conveyed the property lots 8
and 10 in severalty and the strip to both, declaring it to be an
appurtenance to each lot, there could be little doubt of his meaning
and none as to his power. The parties would take just what he
conveyed and take the strip as " appurtenant," giving full force to
the grantor's intention. In such a case can it be claimed that either
party, without the consent of the other, could compel a sale or
division of the strip made by the grantor and accepted by the
grantees as appurtenant to the two lots ? I think not.

Many authorities are cited declaring that land cannot be appur-
tenant to land, and hence title to land will not pass under the word
"appurtenances" as commonly used in deeds. This means that
title to land will not pass by implication. In every case the
authorities seek to define the word, and that is all. The court, in
*Woodhull* v. *Rosenthal* (61 N. Y. 390), says : " A thing ' appur-
tenant ' is defined to be a thing used with and related to or depend-
ent upon another thing *more worthy* and agreeing in its nature and
quality with the thing whereunto it is appendant or ' appurtenant.' "
This definition, however, of the word in the abstract does not pre-
vent a different meaning which any grantor may himself give to
the word as he uses it. When a grantor makes a strip of land, by
express words, " appurtenant" to two other pieces, his meaning is
to be discovered from the context and not from the books.

This strip of land having been set apart to conserve the needs of
lot 8 and lot 10, I see no way in which either John L. Putnam or

Jennie Putnam, or any subsequent grantee, can force a sale or division in an action of partition. This clearly would defeat the intention manifest in the original allotment as made by the commissioners and court. In that allotment, according to its terms, the plaintiff has acquiesced for over twenty-five years. He accepted what was given him, with all its limitations and conditions, express and implied, and one of the implied conditions was that he would not interfere with the use of the strip in its entirety by Jennie Putnam or her grantees. This strip was also made an appurtenance to lot 8 by judgment of the court, and plaintiff, as owner of lot 8, held it and used it as such. When he mortgaged lot 8, "together with the appurtenances," I think he must be deemed to have included this appurtenance. It is not strictly true in all cases that land cannot be made appurtenant to land. Land passes as "appurtenant" in the construction of wills (*Otis* v. *Smith*, 9 Pick. 292; *Blackborn* v. *Edgley*, 1 P. Wms. 600; *Doe* v. *Collins*, 2 T. R. 498; *Buck* v. *Nurton*, 1 B. & P. 53; *Bodenham* v. *Pritchard*, 1 B. & C. 350), wholly depending upon the intention of the testator. In the construction of statutes land may be deemed appurtenant to land. (*McDermott* v. *Palmer*, 8 N. Y. 383.) The demise of a house carries with it the garden, curtilage and close. (*Smith* v. *Martin*, 2 Saund. 400.) In *Archibald* v. *N. Y. C. & H. R. R. R. Co.* (157 N. Y. 574) the court held that the owner of the upland on tidewater took the land under water, granted to his grantor as an "appurtenance;" that such land once granted by the State to the owner of the upland became an appurtenance to the uplands. This would seem to dispose of the declaration that land cannot be appurtenant to land. It does not seem questionable that a grantor may, if he choose, make it appurtenant.

Through the mortgage the plaintiff John L. Putnam having lost his title to lot 8, "together with the appurtenances," we must conclude that he has now no title to this strip sought to be partitioned in this action, and that in any event the plaintiff cannot maintain the action of partition as against the grantees of Jennie Putnam for the reasons hereinbefore stated.

The judgment is affirmed, with costs.

Judgment unanimously affirmed, with costs.