Chief Judge Fuld, (dissenting).
Subdivision 1 of section 235.10 of the Penal Law provides that a person who sells obscene material in the course of his business is presumed to do so with knowledge of its content and character. Since I believe that that presumption is unconstitutional and that the trial court, in adjudging the defendants guilty, relied on it, I would reverse the convictions and dismiss the informations.
Before turning to the question of constitutionality, it is first necessary to demonstrate that the trial court relied upon the presumption in finding scienter and did not, contrary to the majority’s hypothesis, find as a fact, separate and apart from the presumption, that the defendants had “ actual knowledge ” of the offending magazine’s content and character.
The defendants were the managers of two neighborhood bookstores located in Manhattan, the New Yorker Bookstore on the *28 upper west side and the East Side Bookstore on the lower east side. The New Yorker Bookstore, where Kirkpatrick was employed, carried more than 10,000 different titles and 25,000 volumes of hard-cover and paperback books on all manner of subjects, While the East Side shop carried about 16,000 titles and from 50,000 to 60,000 volumes. The only evidence introduced at the trial on the People’s case was that given by each of the arresting police officers that he had purchased the magazine (Zap Cornice No. 4) —which contained the legend on its cover, “ Adults Only ”—for 50 cents.
Despite the indisputable fact that there was not a word- of testimony or evidence presented during the People’s case that either defendant knew the content or nature of Zap No. 4, the trial judge, after the prosecution rested, reserved decision on the defense motion to dismiss on the ground that evidence of scienter was lacking. This ruling demonstrates that the judge necessarily relied on the statutory presumption of knowledge; had he not done so, he would, of course, have granted the motion. In any event, after decision on their motion had been reserved, the deféndants took the stand quite obviously to attempt to rebut that presumption.
Each defendant denied having any familiarity with the contents of the magazine. More specifically, Kirkpatrick testified that, although he had sold some 25 copies, he had never read, indeed, had not even “ looked inside ” of the magazine. And, contrary to the intimation in the court’s opinion (p. 21), Kirkpatrick had never “ reordered” Zap No. 4. The other defendant, Dargis, stated that he had ordered that magazine, as he put it, “ blind,” from an order form furnished by the supplier which merely listed, without description, the titles of the “comics” available. Although Dargis acknowledged that he had “ glanced ” at its “ ending pages ” and had reordered the magazine after the original supply (of 100) had been exhausted, he denied that he had ever read it or had ever discussed its contents with anyone. I would but add that it does not have an obscene cover and that no claim is made that either store dealt in sex-oriented books or in material such as is currently being purveyed in the Times Square area of New York City. As indicated, the trial court found both defendants guilty of selling *29 obscene material, knowing its content and character, in violation of section 235.05 of the Penal Law (64 Misc 2d 1055).
I deem it unnecessary to consider whether the evidence in the record would have supported or justified an affirmative finding of scienter since, in my view, the trial judge’s treatment of the case, as reflected in his opinion, demonstrates that, in deciding that the defendants were guilty, he placed his reliance upon the statutory presumption of knowledge.[1] In the first place, under the caption, “ the issues ”, he declared that he had to pass on two questions with respect to the subject of scienter, namely, “ (a) * * * Is that presumption unconstitutional, as defendants claim? # * * [and] (b) Assuming its constitutionality, have the defendants satisfactorily rebutted the presumption? ” (64 Mise 2d, at p. 1058). In the second place, after deciding that it was valid (pp. 1063-1068), the judge categorically stated that “ The circumstances here clearly indicate that the defendants have not satisfactorily rebutted the presumption ” (p. 1070).
This certainly is not the language a court would use if it had found as an affirmative fact that each of the defendants, independent of the presumption, actually knew the sort of publication he was selling. In point of fact, had the judge believed that the evidence adduced established, beyond a reasonable doubt, that the defendants had actual knowledge of the assertedly obscene nature of the magazine, he would not have found it necessary to treat in depth the constitutionality of the presumption and explicitly announce, as he did, that the defendants had not “satisfactorily rebutted ” that presumption. In light of all this, the single sentence in the course of the trial court’s 30-page opinion — to which the majority points to support its conclusion that the trial judge “ found actual knowledge ” (opn., p. 20) — can only mean that, taking into account all the circumstances of the case, the presumption had not been rebutted.
In short, implicit both in the court’s conduct of the trial and in its treatment of the case is a determination that, absent reliance upon the presumption, the proof offered did not establish that the defendants knew the allegedly obscene nature of the material. This being so, our court may not make a new finding of *30 fact even though we were to assume that the trial judge could have made such a finding. (See People v. Roper, 259 N. Y. 170, 175-177; Murray Co. v. Lidgerwood Mfg. Co., 241 N. Y. 455, 458; Armstrong v. DuBois, 90 N. Y. 95, 99; see, also, Cohen and Karger, Powers of the New York Court of Appeals, pp. 496-497, 751.)[2]
I turn, then, to the question of the constitutionality of the presumption created by section 235.10 of the Penal Law.[3] That statute—providing as it does that one who sells obscene material in the course of his business ‘ ‘ is presumed to do so with knowledge of its content and character ” — enables the prosecution to convict the bookseller of selling obscene material, no matter how large his establishment, or how numerous and varied the publications on his shelf, without any proof whatsoever that he knew the content or character of such material, solely as a result of the presumption of knowledge created by the statute.[4] In my judgment, such a presumption, on its face and certainly as applied to the facts of this case, not only offends against the due process requirements of the Federal Constitution (14th Arndt.) and the State Constitution (art. I, § 6) but also contravenes the guarantee of freedom of expression (U. S. Const., 1st Amdt.; N. Y. Const., art. I, § 8).
A statutory presumption violates due process, the Supreme Court has held, if there is “ no rational connection between the fact proved and the ultimate fact presumed, if the inference of the one from proof of the other is arbitrary because of lack of connection between the two in common experience. * * * [W]here the inference is so strained as not to have a reasonable *31 relation to the circumstances of life as we know them, it is not competent for the legislature to create it”. (Tot v. United States, 319 U. S. 463, 467-468; see, also, Turner v. United States, 396 U. S. 398, 416; Leary v. United States, 395 U. S. 6, 36; People v. McCaleb, 25 N Y 2d 394, 403; People v. Terra, 303 N. Y. 332, 335.) In other words, the “ upshot ” of the decided cases, the Supreme Court wrote in Leary v. United States (395 U. S. 6, 36, supra), is that a “ criminal statutory presumption must be regarded as 1 irrational ’ or ‘ arbitrary, ’ and hence unconstitutional, unless it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend. ”
It is most unlikely that a bookseller — especially in a store such as those in which the defendants were employed—would have knowledge of the content of the publications being offered for sale. To say that booksellers in the circumstances of this case are “ more likely than not ” to know the character and content of all the material they sell is to ignore not only the record evidence regarding the manner in which books and magazines are ordered but the very “ circumstances of life ” itself. The New Yorker Bookstore — in which Kirkpatrick was employed — carried over 10,000 titles, while the East Side shop—where Dargis worked—carried about 16,000 titles. Reason and experience tell us that it would be impossible for a bookseller in either store to acquaint himself with the content and character of so large a number of titles. In any event, it may not be said with “ substantial assurance ” — as required by the cases—that such booksellers may be ‘ ‘ presumed ’ ’ to know the content and character of a publication merely upon proof that they sold it.
However, even if the statutory presumption were able to withstand an attack based on due process grounds, I would be impelled to stamp it unconstitutional as an infringement on the freedom of expression guaranteed by the First Amendment. (See Smith v. California, 361 U. S. 147; Speiser v. Randall, 357 U. S. 513.) The presumption violates that amendment because it creates and occasions a system of “ self-censorship ” on the part of booksellers which affects the sale and distribution of all books —those that are constitutionally protected as well as those that are obscene. It is hardly necessary to state that no comparable injury to the fundamental guarantee of free expression is *32 involved where the presumption permits an inference of knowledge from presence in a stolen car (People v. McCaleb, 25 N Y 2d 394, supra), possession of marijuana (Leary v. United States, 395 U. S. 6, supra) or of machine guns (People v. Terra, 303 N. Y. 332, supra) or even food or the merchandise of ordinary trade. As the Supreme Court observed in Smith v. California (361 U. S. 147,152-153, supra), “ There is no specific constitutional inhibition against making the distributors of food the strictest censors of their merchandise, but the constitutional guarantees of the freedom of speech and of the press stand in the way of imposing a similar requirement on the bookseller.”
Indeed, it was the danger of self-censorship in the sale of books that prompted the court in Smith (361 U. S. 147, supra) to make clear its insistence on the requirement of knowledge by the bookseller. The court there invalidated a California statute which made it unlawful for a bookseller to have obscene material in his store, even though he had no knowledge of its content or character. In holding that the elimination of the requirement of scienter would inhibit and stifle free expression, the Supreme Court declared (361 U. S., at pp. 153-154):
• “ By dispensing with any requirement of knowledge of the contents of the book on the part of the seller, the ordinance tends to impose a severe limitation on the public’s access to constitutionally protected matter. For if the bookseller is criminally liable without knowledge of the contents, and the ordinance fulfills its purpose, he will tend to restrict the books he sells to those he has inspected; and thus the State will have imposed a restriction upon the distribution of constitutionally protected as well as obscene literature. * * * And the bookseller’s burden would become the public’s burden, for by restricting him the public’s access to reading matter would be restricted. If the contents of bookshops and periodical stands were restricted to material of which their proprietors had made an inspection, they might be depleted indeed. The bookseller’s limitation in the amount of reading material with which he could familiarize himself, and his timidity in the face of his absolute criminal liability, thus would tend to restrict the public’s access to forms *33 of the printed word which the State conld not constitutionally suppress directly. The bookseller’s self-censorship, compelled by the State, would be a censorship affecting the whole public, hardly less virulent for being privately administered. Through it, the distribution of all books, both obscene and not obscene, would be impeded.”
The Penal Law provision here challenged attempted to avoid the Smith problem by creating a rebuttable presumption of knowledge instead of absolute liability. The trouble with this procedural tactic is that it does not come to grips with the problem of self-censorship raised in the Smith case, namely, that the bookseller will tend to limit his stock to books which he has read and can guarantee.
It is, of course, not necessary that there be eyewitness testimony that the bookseller had read a book in order to prove his knowledge of its contents but it seems clear that legislation, such as section 235.10, which sanctions conviction of the bookseller for selling obscene material without any proof whatsoever that he knew or was familiar with its nature, is afflicted with precisely the same vice and produces the same objectionable result as the statute struck down in Smith v. California (361 U. S. 147, supra). In other words, such legislation requires the bookseller to go forward with affirmative proof that he had no knowledge of the content of the publication in order to prevent a finding of guilt.
I would emphasize that making the presumption rebuttable does not make it less effective as a restraint. In either case, a bookseller would be compelled to become a censor and, under compulsion of the statute, would tend to restrict the books to those he read or investigated. In consequence, the State is permitted to indirectly suppress what it could not suppress directly. Thus, the rationale underlying the decision in Smith— the very real danger of self-imposed restriction of freedom of expression—also renders the presumption in this case impermissible and unconstitutional.
Although the State may generally regulate the allocation of the burden of proof through legislation, it is clear that a statute may not, where the First Amendment is involved, declare a person presumptively guilty of a crime or presume that he has *34 committed one of its material elements. (See Speiser v. Randall, 357 U. S. 513, 523-524, supra; Smith v. California, 361 U. S. 147, 150-151, supra; Grove Press v. Evans, 306 F. Supp. 1084,1087-1088; see, also, Note, Obscenity Prosecutions, 41 N. Y. U. L. Rev. 791, 797.) Freedom of speech is toó important a right to allow it to be seriously impeded or impaired by a presumption.
The convictions should be reversed and the informations dismissed.
Judges Burke, Jasen and G-abrielli concur with Judge Breitel ; Chief Judge Fuld dissents and votes to reverse in a separate opinion in which Judges Jones and Wachtler concur.
Order affirmed.

. Indeed, the Assistant District Attorney who argued the appeal in our court frankly acknowledged, in response to a query from the bench, that the presumption was “ needed ” to establish the guilt of the defendant Kirkpatrick.

. The applicable rule is well stated in the Murray case (241 N. Y. 455, 458, supra): “ no finding based upon merely permissible inference of fact may be supplied by [our] court where the court which might have drawn such inference chose not to do so.”

. Subdivision 1 of section 235.10 recites that “A person who promotes * * * obscene material, or possesses the same with intent to promote * * * it, in the course of his business is presumed to do so with knowledge of its content and character.” Subdivision 2 provides that one “who possesses six or more identical or similar obscene articles is presumed to possess them with intent to promote the same”, and section 235.00 (subd. 4) declares that “Promote” means “to manufacture, issue, sell, give” etc.

. As previously noted (supra, p. 28), the People actually rested their case without introducing any evidence of such knowledge on the part of the defendants.