■ In the *Matter* of a *Trust Created by* HARRY D. MALASKY, Deceased. CHARLOTTE R. MALASKY et al., Appellants; MARION MALASKY et al., as Trustees of a Trust Created by HARRY D. MALASKY, Deceased, Respondents. [711 NYS2d 868] —Crew III, J. P. Appeals (1) from an order of the Surrogate's Court of Ulster County (Czajka, S.), entered February 18, 1999, which, *inter alia,* construed the subject trust such that article VII controls the distribution of the trust assets, and (2) from an order of said court, entered August 17, 1999, which denied petitioners' motion for reconsideration.

This appeal has its genesis in a joint revocable trust created by Harry D. Malasky (hereinafter decedent) and his spouse, respondent Marion Malasky (hereinafter Malasky), in February 1994.[1] Following decedent's death in November 1995, respondent Louis Klein, who purportedly drafted the trust document, succeeded decedent as trustee and, together with Malasky, administered the various trust assets. In May 1997 petitioners, decedent's children from a previous marriage, commenced this proceeding seeking, *inter alia,* removal of respondents as trustees and to compel an accounting.[2] Following joinder of issue and discovery, petitioners moved for summary judgment and respondents cross-moved for an order directing decedent's son, petitioner Philip G. Mann,[3] to return certain moneys paid to him under article VIII of the trust pursuant to a prior order of Surrogate's Court. Surrogate's Court denied the respective motions, except insofar as petitioners sought a final accounting from respondents, and these appeals ensued.

The primary issue on appeal distills to whether article VII or article VIII of the trust controls the distribution of the various trust assets. Article VII provides, in relevant part, as follows:

"Trustee shall hold, manage and invest the deceased Grantor's initial share in the sum of * * * $600,000 * * * (the 'Family Share') in accordance with the powers granted by this Agreement, for the following purposes:

"(1) To hold, manage, invest and reinvest the same, and to

1. Decedent and Malasky subsequently executed two addenda to the trust in December 1994 and May 1995, respectively, the specifics of which are *not directly at issue on appeal.*

2. Klein and Malasky subsequently resigned as trustees in August 1998 and, although not entirely clear from the record, a local bank apparently was selected as the successor trustee.

3. Mann is referred to as Philip G. Malasky under the terms of the trust agreement.

collect and receive the income therefrom and to pay the net income therefrom to the surviving Grantor during his or her lifetime.

"(2) Upon the death of the surviving Grantor, the remaining principal and accrued income of the Family Share shall be distributed as the surviving Grantor shall direct in his or her Will or by a living trust agreement specifically referring to and exercising this special power of appointment in his or her Last Will and Testament or said Trust Agreement; provided, however, that * * * this power shall be exercisable only in favor of both Grantors' lineal descendants. *If the surviving Grantor fails to exercise the special power of appointment herein conferred effectively, then upon his or her death, that undistributed portion of the corpus of the Family Share and any accumulated or unexpended income shall be held and distributed as provided for*" [in article VIII] (emphasis supplied).

Reading the foregoing provisions of article VII in isolation, decedent's intent would appear to be quite clear—Malasky would receive the net income from the "Family Share" of the trust during her lifetime and would provide for the distribution of the corpus and any income upon her death through the provisions of her will or trust agreement, with the only restriction being that such distribution had to be in favor of *both* her and decedent's lineal descendants, i.e., Malasky could not disinherit petitioners. Should Malasky fail to exercise the special power of appointment, distribution of the corpus and any income would be accomplished in accordance with the provisions of article VIII.

A problem arises, however, upon reference to article VIII of the trust agreement, which provides, in pertinent part, as follows:

"A. DISTRIBUTION OF ASSETS. Upon the death of the surviving Grantor or, upon termination of the common trust referred to above, *if he or she failed to exercise effectively the special power of appointment conferred above* * * * *Trustee shall divide the entire remaining Trust Estate into shares as follows:*

"(1) SPECIFIC BEQUESTS.

"(a.) If [Malasky] shall survive [decedent], then upon his death the Trustees shall distribute to her all of the proceeds due upon [two enumerated mortgages]; [the] homestead parcel together with the improvements thereon; and the sum of * * * $150,000. * * *

"(2) RESIDUARY ESTATES.

"(a.) If [decedent] should pre-decease [Malasky], then *his re-*

*siduary* shall be distributed, as follows: One-third to his son PHILIP G. MALASKY, outright and free of trust, per stirpes; and two-thirds to his Trustees hereinafter named to be retained in Trust, invested and re-invested, with all income earned thereon to be paid to [Malasky] quarter-annually for the remainder of her lifetime, and upon her death, to be distributed in two (2) equal shares, immediately and free of trust to his daughters, CHARLOTTE R. MALASKY and BERTHA R. MALASKY, per stirpes" (emphasis supplied).

Although the preamble to article VIII recites that the provisions thereof become effective only upon, *inter alia*, Malasky's death, the enumerated subdivisions of article VIII govern bequests that by their terms are to occur during Malasky's lifetime. Additionally, although the preamble to article VIII suggests that such article is to govern the distribution of "the entire remaining Trust Estate" existing upon Malasky's death, subdivision (A) (2) (a), insofar as is relevant to this appeal, appears to cover only those distributions to be made to petitioners from decedent's residuary estate.

Contrary to the finding made by Surrogate's Court,[4] we are of the view that article VIII, whether read alone or in conjunction with article VII, is inconsistent with respect to the subject distributions and creates an ambiguity that cannot be resolved on this record. Simply stated, it cannot be ascertained from the trust agreement the extent of the funds to which petitioners are entitled, the source of such funds or when such funds are to be distributed. That being the case, we deem it appropriate to remit this matter to Surrogate's Court for an evidentiary hearing at which extrinsic evidence of decedent's intent may be adduced (*see, Matter of McCabe*, 269 AD2d 727, 729). The parties' remaining contentions, including petitioners' assertion that respondents should be estopped from contesting the applicability of article VIII and that Surrogate's Court erred in denying their motion for reconsideration, together with respondents' assertion that petitioners did not timely perfect the instant appeal, have been examined and found to be lacking in merit.

---

4. Surrogate's Court apparently determined that decedent's primary intent was to benefit Malasky as his surviving spouse and, therefore, article VII governed the disposition of the trust assets. As to article VIII, Surrogate's Court found that the terms thereof could be accomplished only during Malasky's lifetime in light of the specific bequests made thereunder and her entitlement to receive income during her lifetime from the trust for decedent's daughters referenced in article VIII (A) (2) (a). Implicit in the decision of Surrogate's Court is the conclusion that petitioners are only entitled to their stated share of whatever assets may have existed in decedent's residuary estate and "poured over" into the trust.

Spain, Mugglin, Rose and Lahtinen, JJ., concur. Ordered that the order entered February 18, 1999 is modified, on the law, without costs, by reversing so much thereof as found no ambiguity in the subject trust document and determined that article VII thereof controlled distribution of the trust assets; matter remitted to the Surrogate's Court of Ulster County for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed. Ordered that the order entered August 17, 1999 is affirmed, without costs.