# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**1166**

**CA 12-00827**

PRESENT: CENTRA, J.P., PERADOTTO, LINDLEY, SCONIERS, AND MARTOCHE, JJ.

---

IN THE MATTER OF THE ESTATE OF GARY M. PHILLIPS,
DECEASED.
--------------------------------------------------
KELLY E. HEBERLEIN, AS EXECUTOR OF THE ESTATE      MEMORANDUM AND ORDER
OF GARY M. PHILLIPS, DECEASED,
PETITIONER-APPELLANT;

CHERIL M. EBERTH, ALLISON M. ALBERTI,
RESPONDENTS-APPELLANTS,
AND LORRIE MACDIARMID, RESPONDENT-RESPONDENT.

---

FEUERSTEIN & SMITH, LLP, BUFFALO (MARK E. GUGLIELMI OF COUNSEL), FOR
PETITIONER-APPELLANT AND RESPONDENTS-APPELLANTS.

THE LAW OFFICE OF ROBERT WEIG, LANCASTER (ROBERT E. WEIG OF COUNSEL),
FOR RESPONDENT-RESPONDENT.

---

Appeal from an order of the Surrogate's Court, Erie County
(Barbara Howe, S.), entered July 22, 2011. The order, inter alia, in
effect granted that part of the cross motion for summary judgment of
respondent Lorrie MacDiarmid with respect to her proposed construction
of article four of the last will and testament of decedent.

It is hereby ORDERED that the order so appealed from is
unanimously modified on the law by denying that part of respondent's
cross motion for summary judgment construing article four of
decedent's last will and testament in her favor and vacating that part
of the order and as modified the order is affirmed without costs, and
the matter is remitted to Surrogate's Court, Erie County, for further
proceedings in accordance with the following Memorandum: Petitioner
commenced this proceeding seeking construction of certain provisions
of the last will and testament (will) of her father, Gary M. Phillips
(decedent). In the will, decedent devised his property to petitioner
and her sisters, respondents Cheril M. Eberth and Allison M. Alberti
(collectively, daughters) and his live-in girlfriend, Lorrie
MacDiarmid (respondent). Thereafter, petitioner moved for summary
judgment, contending that the third and fourth articles of the will
are ambiguous and require Surrogate's Court to consider extrinsic
evidence in order to construe the meaning of those articles.
Respondent cross-moved for summary judgment, contending that the will
is unambiguous and thus that the Surrogate is precluded from
considering extrinsic evidence in construing the will. The Surrogate
in effect granted that part of petitioner's motion with respect to her
proposed construction of article three and that part of respondent's

cross motion with respect to her proposed construction of article four.  We agree with the daughters that the Surrogate erred in granting that part of respondent's cross motion with respect to the construction of article four and that extrinsic evidence is necessary to resolve the latent ambiguity in that article.

Initially, we note that we further agree with the daughters that respondent's challenge to the Surrogate's construction of article three of the will is not properly before us inasmuch as respondent failed to take a cross appeal from the order (*see Harris v Eastman Kodak Co.*, 83 AD3d 1563, 1564; *Matijiw v New York Cent. Mut. Fire Ins. Co.*, 292 AD2d 865, 866; *see generally* CPLR 5515 [1]).  With regard to article four of the will, we note as background that, at the time of his death, decedent owned a lot measuring 120 feet by 300 feet (lot), upon which his house and a garage were located.  Decedent also owned 88 acres of land adjacent to the lot.  The 88-acre parcel (hereafter, farmland) included a "pole barn" that decedent used to house his tractor and cows.  In article four of the will, decedent bequeathed his residence "*and the plot of land appurtenant thereto*" to respondent (emphasis added).  That article provides that, "[i]f any balance of a mortgage, loan, or encumbrance against the said residence, *or the plot of land appurtenant thereto*, remains unpaid at the time of my death, then I direct that the recipient or recipients of such property shall receive the property subject to the said mortgage, loan or encumbrance" (emphasis added).  The fifth article of the will granted to the daughters in equal shares "the rest, residue and remainder of [decedent's] property, both real and personal, of whatsoever kind and nature and wherever located, to which [decedent] may be entitled in any manner at the time of [his] death."

In the petition, petitioner contended with respect to article four of the will that the phrase "the plot of land appurtenant thereto" referred to the lot on which decedent's residence was located, not to the farmland.  Petitioner attached extrinsic evidence supporting her proposed construction of article four as exhibits to the petition.  In opposing the admission of that extrinsic evidence, respondent contended that, under the plain language of article four of the will, she was entitled to the residence, the lot, and the farmland.

As noted above, petitioner moved and respondent cross-moved for summary judgment.  In support of her motion, petitioner contended that the phrase "the plot of land appurtenant thereto" in article four is ambiguous, requiring extrinsic evidence to determine decedent's intent.  In opposition to petitioner's motion and in support of her cross motion, respondent contended that the terms of the will were clear and unambiguous and thus that the consideration of extrinsic evidence was precluded.  The Surrogate concluded that the bequest of real property to respondent under article four consisted of decedent's residence, the lot, and the farmland.  The Surrogate therefore agreed with respondent that decedent's intent could be inferred from the "four corners of the will" and thus that reference to extrinsic evidence was improper.  That was error.

It is well settled that, "in a will construction proceeding, the search is for the decedent's intent . . . and not for that of the draft[er]" (*Matter of Cord*, 58 NY2d 539, 544, *rearg denied* 60 NY2d 586; *see Matter of Bieley*, 91 NY2d 520, 525; *Matter of Gustafson*, 74 NY2d 448, 451; *Matter of Shannon*, 107 AD2d 1084, 1085). In ascertaining decedent's intent, " 'a sympathetic reading of the will as an entirety' is required" (*Matter of Carmer*, 71 NY2d 781, 785, quoting *Matter of Fabbri*, 2 NY2d 236, 240; *see Matter of Scale*, 38 AD3d 983, 984). "[T]he best indicator of the testator's intent is found in the clear and unambiguous language of the will itself and, thus, where no ambiguity exists, [e]xtrinsic evidence is inadmissible to vary the terms of a will" (*Scale*, 38 AD3d at 985 [internal quotation marks omitted]; *see Cord*, 58 NY2d at 544; *Matter of Goldstein*, 46 AD2d 449, 450, *affd* 38 NY2d 876). "If, on the other hand, a provision of the will is ambiguous, extrinsic evidence is properly considered in discerning the testator's true intent" (*Matter of McCabe*, 269 AD2d 727, 729; *see Matter of Schermerhorn*, 31 NY2d 739, 741; *Goldstein*, 46 AD2d at 451). "A latent ambiguity arises when the words used are neither ambiguous nor obscure but ambiguity appears relative to persons or things meant" (*Matter of Blodgett*, 168 Misc 898, 901).

As noted above, decedent's will devised his residence "and the plot of land appurtenant thereto" to respondent. "Appurtenant" has been defined as "[a]nnexed to a more important thing" (Black's Law Dictionary 118 [9th ed 2009]). Moreover, courts have defined an appurtenance as "something annexed to or belonging to a 'more important' thing and not having an independent existence" (*Matter of Crystal v City of Syracuse, Dept. of Assessment*, 47 AD2d 29, 32, *affd* 38 NY2d 883), i.e., "a thing used with and related to or dependent upon another thing *more worthy*" (*Woodhull v Rosenthal*, 61 NY 382, 390). Under such a definition, "land can never be appurtenant to other land, or pass with it as belonging to it" (*id.; see Armstrong v DuBois*, 90 NY 95, 102). Nevertheless, a court's definition of the term "appurtenant" in the abstract "does not prevent a different meaning which any grantor may himself [or herself] give to the word as he [or she] uses it. When a grantor makes a strip of land, by express words, 'appurtenant' to two other pieces, his [or her] meaning is to be discovered from the context, and not from the books" (*Putnam v Putnam*, 77 App Div 554, 556). Here, the will does not refer to land appurtenant to *other land*; rather, it refers to land appurtenant to decedent's residence (*see generally Schermerhorn*, 31 NY2d at 741).

We conclude that the definition of "appurtenant" does not clarify decedent's intent with regard to the farmland (*see Carmer*, 71 NY2d at 785), nor does a sympathetic reading of the entire will clarify his intent. Rather, the language in article four referring to "the plot of land appurtenant" to decedent's residence is ambiguous, and the Surrogate should have considered extrinsic evidence " ' to explain to what particular pieces of land the language of the will referred' " (*Schermerhorn*, 31 NY2d at 741, quoting *Matter of Phipps*, 214 NY 378, 381, *rearg denied* 215 NY 652; *see McCabe*, 269 AD2d at 729; *Matter of Schaffner*, 162 AD2d 972, 972; *Goldstein*, 46 AD2d at 450-451). It is

undisputed that, at the time of his death, decedent owned the lot on which his residence was located as well as the adjacent farmland. It is not clear from the four corners of the will, however, whether, in referring to "the plot of land appurtenant to" his residence, decedent was referring to the smaller lot upon which his residence was situated or the adjacent farmland. Thus, contrary to the Surrogate's determination, we conclude that the language of article four does not unambiguously provide that the plot of land appurtenant to the residence is separate and distinct from decedent's residence.

We further conclude that the Surrogate erred in determining that the second paragraph of article four clearly indicates that the plot of land appurtenant to the residence refers to the farmland. The Surrogate adopted respondent's position that, if the plot of land appurtenant to the residence referred to the lot upon which the residence was located, the second paragraph of article four relating to a mortgage would be rendered meaningless. The Surrogate agreed with respondent that because a mortgage could not be secured against the residence separate and distinct from the land upon which it was built, the appurtenant plot of land must refer to the farmland. As noted above, however, the aim in construing a will is to determine the intent of the decedent, not that of the drafter (*see Cord*, 58 NY2d at 544). Here, the Surrogate's conclusion assumes that decedent would have understood that the lot could not be mortgaged separately from the residence, and there is no basis for that assumption.

We further conclude that the parties' submissions raise issues of fact concerning decedent's intent. In support of her motion, petitioner submitted, inter alia, the deposition testimony of the attorney who drafted the will, a will questionnaire completed by decedent, and the attorney's notes relating to his preparation of the will. On the will questionnaire, decedent wrote, "I would like to leave my house [in or on] . . . lot size 120 x 130 to [respondent]." Similarly, the attorney's notes state "[to respondent] . . . [the residence] (w/mtge). house property 120 x 300 she'll take home subject to mtge [*sic*] . . . [r]est of estate to 3 girls = shares, per stirpes." At his deposition, the attorney testified that the reference to the land appurtenant to the residence in article four was intended to mean the house and the plot of land on which the house stood. He "assume[d]" that such plot was the "120 by 300" foot lot "because those are the numbers that appear[ed] in [his] notes and . . . on the will questionnaire." The attorney did not recall decedent referring to any real property other than the lot on which the residence was located.

Petitioner also submitted a tax map indicating that the county taxed the lot and the farmland separately, deeds establishing that the farmland was transferred separately from the lot, and the mortgage on the lot. That evidence suggests that decedent viewed the lot and the farmland separately, and may support the daughters' contention that the plot of land appurtenant to the residence was the lot upon which the residence sits (*see generally Schermerhorn*, 31 NY2d at 741). Respondent, however, referred to evidence reflecting that, when decedent originally purchased the lot and the farmland in 1978, it

consisted of one parcel and, according to respondent, decedent partitioned the parcel only in anticipation of his then-pending divorce.  Respondent further asserted that she and decedent shared the chores associated with maintaining the farmland and that the utilities servicing the pole barn, located on the farmland, were attached to the meters located inside the residence.  Thus, we conclude that, under these circumstances, the parties should be given the opportunity to present extrinsic evidence at a hearing before the Surrogate regarding decedent's intended distribution under article four of the will (*see McCabe*, 269 AD2d at 729; *Schaffner*, 162 AD2d at 973; *cf. Goldstein*, 46 AD2d at 452; *see also Matter of Malasky*, 275 AD2d 500, 502; *see generally Matter of White*, 65 AD3d 1255, 1258).

We therefore modify the order accordingly, and we remit the matter to the Surrogate for further proceedings in accordance with our decision.

Entered:  December 28, 2012                    Frances E. Cafarell
                                               Clerk of the Court