■ In the Matter of SUPREME BURGLAR ALARM CORP., Appellant, v MARSHALL G. KAPLAN et al., Constituting the Tax Commission of the City of New York, Respondents.—In a proceeding pursuant to article 7 of the Real Property Tax Law, the petitioner appeals from so much of an order of the Supreme Court, Kings County, dated April 27, 1978, as (1) declared that the real property assessments levied against petitioner's property for the tax years 1974-1975, 1975-1976 and 1976-1977, exclusive of the question of the amount thereof, were legal and (2) ordered that the causes of action for each of the said three years, exclusive of the issue of overvaluation, be dismissed. Order affirmed insofar as appealed from, with costs. The petitioner, Supreme Burglar Alarm Corp. (Supreme), installs and leases burglar alarm systems in Kings County. These systems are capable of being centrally monitored at another location by way of connection to leased telephone wires. Some of these systems are being monitored by Varigard Central Station and Alarm Corp. (Varigard). Varigard is closely connected with Supreme.[1] New York City has sought to tax all of Supreme's centrally monitored alarm systems which it leases to local subscribers because the Tax Commission alleges that they fall under the legislative definition of real property. Section 300 of the Real Property Tax Law provides that "All real

1. The president of Supreme is also the president of Varigard. He is also a major stockholder in both companies. Supreme contracts for Varigard's monitoring services with its subscribers and also bills them on behalf of Varigard.

property within the state shall be subject to real property taxation". Special Term properly determined that the equipment leased by petitioner to its subscribers is taxable under section 102 (subd 12, par [d]) of the Real Property Tax Law because it is "appurtenant" to telephone wires as that term is used under the law (see *People ex rel. Holmes Elec. Protective Co. v Chambers,* 1 Misc 2d 990, affd 285 App Div 886, affd 1 NY2d 760). An entry on the premises results in a signal communication by wire that the premises have been breached[2] *(People ex rel. Holmes Elec. Protective Co. v Chambers,* 1 Misc 2d, p 996, *supra; cf. Matter of Owl Protective Co. v Public Serv. Comm. of State of N. Y.,* 254 App Div 600). We are cognizant of a recent line of cases which has narrowed the definition of appurtenances under section 102 (subd 12, par [d]) of the Real Property Tax Law excluding such items as individually owned office telephone systems, portable bank vault alarms, plug-in telephone receivers, and leased financial data processing equipment (see, e.g., *Matter of Crossman Cadillac v Board of Assessors,* 60 AD2d 842, affd 44 NY2d 963; *Matter of Metropolitan Bank of Syracuse v Department of Assessment of City of Syracuse,* 57 AD2d 1055, affd 44 NY2d 864; *Matter of Crystal v City of Syracuse, Dept. of Assessment,* 47 AD2d 29, affd 38 NY2d 883; *Matter of Trans-Lux Corp. v Finance Administrator of City of N. Y.,* 62 AD2d 962). However, when the Real Property Tax Law was enacted into law in 1959 it contained a saving clause which expressly indicated that those items defined as real property under the previous tax law (see Tax Law, former § 2, subd 6) were intended to continue in force without change in substance and effect. The classification of any property as real property was not to be broadened or diminished (Real Property Tax Law, former § 1602, subd 5). The alarm system which was held to be real property in the *Holmes* case (1 Misc 2d 990, *supra)* in 1953 was very similar to the property involved in the instant case. Both systems involved an electrical circuit installed on local premises which resulted in an electric signal being sent to a central monitoring service. This equipment was owned by the entities being taxed. Although the *Holmes* network was larger, in both cases the leased alarms formed a part of a complex network capable of communicating notice of unauthorized entry. In view of the fact that the *Holmes* case was decided before the Real Property Tax Law was enacted it is not for the courts to diminish the previously defined scope of taxable real property. Redress, if any, for the petitioner must be in the Legislature. The petitioner's objection to the approximation of the number of units being centrally monitored should be considered at the upcoming hearing on the amount of the assessments. Furthermore, the court should allow the petitioner to present evidence which would support its claim of intentional discrimination by the taxing authority. Hopkins, J. P., Damiani, Titone and Martuscello, JJ., concur.

2. Ownership by petitioner of the telephone wires over which the signal is carried to the central monitoring service is not necessary to sustain the tax. In the *Holmes* case, the petitioner owned some of the lines and leased others from the telephone company *(People ex rel. Holmes Elec. Protective Co. v Chambers,* 1 Misc 2d 990, 995, *supra).*