In the Matter of the Application of NEW YORK TELEPHONE COMPANY, Petitioner, Appellant, for an Order that ARTHUR M. FERRIS and Others, Constituting the Board of Assessors of the City of Syracuse, Respondents, Show Cause Why the Assessment of Certain Property of Said Petitioner for the Year 1937 Should Not Be Declared Erroneous, Illegal, Unjust and Unreasonable, and Corrected Accordingly.

Fourth Department, June 28, 1939.

*George R. Fearon* [*Edward L. Blackman* and *John T. Smith* of counsel], for the appellant.

*James C. Tormey, Corporation Counsel,* for the respondents.

LEWIS, J. Is the central office equipment of a telephone company assessable as real property under subdivision 6 of section 2 of the Tax Law?

This question arises upon an appeal by the taxpayer from a judgment dismissing its petition in a proceeding instituted under

section 2 of chapter 75 of the Laws of 1906 (added by Laws of 1923, chap. 304, § 2) to correct the 1937 assessment upon the land and building owned by the petitioner at Nos. 321–325 Montgomery street in the city of Syracuse.

The demand of the petitioner is that from the total assessment of $961,825 fixed by the respondents, there should be deducted the sum of $467,620, which is the stipulated value of central office equipment located in the building and which the petitioner claims to be personal property and thus non-assessable. (Tax Law, § 3, as amd. by Laws of 1933, chap. 470.)

We are to rest our decision upon what is believed to be the tax policy of the State as it refers to the taxation of telephone property and as declared by the Legislature in the statute which we are required to construe. Mindful that " a taxing statute must be given a practical construction " (*Matter of Mendoza Fur Dyeing Works*, v. *Taylor*, 272 N. Y. 275, 281), and that it " should be interpreted as the ordinary person reading it would interpret it " (*Howitt* v. *Street & Smith Publications, Inc.*, 276 N. Y. 345, 351), we shall consider first the functional relation existing in 1937 between the petitioner's outside wires and the accessory apparatus constituting its central office equipment.

In general it may be said that the central office equipment, with which we are now concerned, comprises those many component mechanical parts or appliances which, operating coordinately, are essential to the performance of that part of petitioner's telephone service which it renders when, in response to a subscriber's call, the subscriber's wire is connected with the wire of the party called, thereby opening a through line for voice transmission. Twenty-five years ago that particular operation of connecting the subscriber's wire and the wire of the party called was performed manually at the central office. At that time there was in use the magneto type of equipment which involved an installation of dry cells with each telephone and required the subscriber to rotate a crank to signal the central operator who in turn selected the line of the party called and completed the call. The magneto type of installation soon gave way to the common battery system which eliminated both the necessity for dry cells and the crank method of signaling the central operator. Then followed the dial system whereby the desired number is dialed by the subscriber and the call is completed by means of mechanical apparatus at the central office which connects the two outside wires involved in each call and thus opens the line of communication.

To afford its patrons dial service the petitioner has installed in its Montgomery street building the Strowger automatic system

which, when assembled and operating as a unit, is known as the "step-by-step" automatic equipment. Each unit of this system, of which two units had been installed in the Montgomery street building and were in operation in 1937, comprised thousands of delicately adjusted mechanical appliances, including line, selector and connector switches and many other devices — enough to afford local service to more than 15,000 subscribers in one section of the city. These appliances were manufactured articles, of standard design, purchasable by the petitioner as its service load demanded and transferable from one local exchange to another as operating problems required. The various types of switches and other appliances were not fastened directly to the building. They were either hung upon or fastened to steel frames which in turn were bolted to the floor or ceiling securely enough to insure rigidity and to prevent their "creeping" out of alignment and thus to hold intact the sensitive adjustments and connections which might otherwise have been disarranged. There were also manually operated toll switchboards which had been retained in 1937 to complete toll calls from local subscribers; also gas engines and electric generators for emergency use and various types of apparatus, including storage batteries, by means of which alternating current purchased locally by the petitioner was transformed into direct current and kept at the uniform voltage required by both manually operated equipment and the automatic dial system.

Having in mind one of the common-law characteristics of fixtures (*Matter of City of New York [Whitlock Ave.]*, 278 N. Y. 276, 281, 282), it may be said that petitioner's central office equipment in its Montgomery street building has been so ingeniously devised and installed that, although bolted to the floor in many instances — as were the frames upon which are mounted the various types of switches — it could be detached and removed without material injury to the realty. However, we do not propose to apply here the common-law rules which define fixtures as between vendor and vendee because, as we view our present problem, "the Tax Law has set up a standard of its own which must govern the case." (*Herkimer County L. & P. Co.* v. *Johnson*, 37 App. Div. 257, 264.)

As to the mechanical operation of the "step-by-step" automatic equipment, it is set in motion when a subscriber dials a number. The rotation of the dial creates an impulse which, aided by electricity applied to the subscriber's wire, is so reflected at the central office equipment that when the subscriber removes the receiver, the line switch at the central office — aided by the co-ordinating functions of other automatic devices which are essential to a

completed call — selects the line of the party called. It is thus seen that a telephone call made by the use of the automatic system can be completed only when each appliance from the calling party's dial phone to the phone of the party called are in complete mechanical co-ordination. These appliances include the phone at either end of the voice transmission, the wires which lead from either phone to the central office and the maze of mechanical equipment at the central office which automatically connects the two wires and thus completes the call. A failure of any appliance along the line may interrupt either the impulse from the subscriber's dial or the transmission of his voice.

It is, therefore, obvious that outside wires and central office equipment are essential component parts which must function together as a unified, co-ordinated system to furnish the telephone service afforded by the petitioner. The outside wires are of no advantage to that service without the central office equipment which, as we have seen, is essential to complete a call.

With that fact in mind we pass to a consideration of subdivision 6 of section 2 of the Tax Law which, when read with section 3 of the act defines what property is taxable within the term "real property."

§. 2, subd. 6. "The terms 'land,' 'real estate,' and 'real property,' as used in this chapter, include the land itself above and under water, all buildings and other articles and structures, substructures and superstructures, erected upon, under or above, or affixed to the same; * * * all telegraph lines, wires, poles *and appurtenances.*"

The parties are in agreement that the use of the word " telegraph " in the statute includes " telephone." (*Hudson River Telephone Co.* v. *Watervliet Turnpike & Railway Co.*, 135 N. Y. 393, 404, 405; *Holmes Electric Protective Co.* v. *Williams*, 228 id. 407, 417, 443.) Accordingly, in defining the tax policy of the State the Legislature has included within " real property " which is subject to taxation (§ 3), not only " the land itself * * * all buildings and other articles and structures * * * erected upon * * * or affixed to the same," but also " all telegraph lines, wires, poles and *appurtenances.*"

The petitioner contends that, as employed in the clause last quoted above, the word " appurtenances " relates to " poles "— the first antecedent word — not to the preceding words " lines " or " wires." We cannot agree with that construction. In our view each of the four words " lines," " wires," " poles " and " appurtenances " which has a place in the clause. is a noun and

each is modified by the word "telegraph" which is employed adjectively.

If, however, the clause can be construed to mean "all telephone lines, wires, poles and [their] appurtenances" the result would not be — as claimed by the petitioner — that the word "appurtenances" relates only to "poles," the noun next preceding it. "The grammatical rule, which is also the legal rule in construing statutes, is that where general words occur at the end of a sentence, they refer to and qualify the whole; while, if they are in the middle of a sentence, and sensibly apply to a particular branch of it, they are not to be extended to that which follows. (2 Inst. 50; *Rex* v. *The Inhabitants of Shipton*, 8 B. & C. 94; Dwarris on Statutes, 704.)" (*Coxson* v. *Doland*, 2 Daly, 66, 68, cited with approval in *Lambert* v. *People*, 76 N. Y. 220, 227.) (See, also, *People* v. *Rosenberg*, 138 N. Y. 410, 415.)

We are thus led to conclude that in the statutory definition of real property as a subject of taxation (Tax Law, § 2, subd. 6, and § 3) the Legislature intended the word "appurtenances" as used in connection with "lines," "wires" and "poles" and modified by the word "telegraph" to include telephone lines, wires and poles and all accessory apparatus installed within a central office as an integral part of the equipment essential to the completion of a telephone call.

It follows that the respondents were authorized in 1937 to assess as real property the petitioner's central office equipment installed in its Montgomery street building, despite the fact that it can be detached and removed from the building without substantial injury to the realty. (See *Herkimer County L. & P. Co.* v. *Johnson, supra*, p. 264; *Southern California Telephone Co.* v. *State Board of Equalization*, 12 Cal. [2d] 127, 82 P. [2d] 422; *Detroit United Railway* v. *Board of State Tax Comrs*, 136 Mich. 96; 98 N. W. 997.) We do not interpret the decisions in *People ex rel. New York Edison Co.* v. *Feitner* (99 App. Div. 274; affd., 181 N. Y. 549) and *People ex rel. Glen Telephone Co.* v. *Failing* (57 Misc. 308; modfd. and affd., 130 App. Div. 888; affd., 195 N. Y. 618) as rulings which serve to classify the central office equipment here in suit as being non-taxable personal property under sections 2 and 3 of the Tax Law.

The judgment and the parts of the order from which appeals are taken should be affirmed, with costs.

All concur. Present — SEARS, P. J., CROSBY, LEWIS TAYLOR, and DOWLING, JJ.

Judgment and order, so far as appealed from, affirmed, with costs. New finding of fact made.