In the Matter of MILTON J. CRYSTAL et al., Respondents, v. CITY OF SYRACUSE, DEPARTMENT OF ASSESSMENT, Appellant.

Fourth Department, February 28, 1975.

*Edward P. Kearse, Corporation Counsel (Eleanor Theodore* of counsel), for appellant.

*Crystal, Manes & Rifken (Kenneth D. Whitelaw* of counsel), for respondents.

SIMONS, J. This is a proceeding to review a tax assessment pursuant to article 7 of the Real Property Tax Law. The items of property assessed are portable plug-in telephones owned by petitioners and located in their law offices. The trial court held that these telephones were not subject to real property tax assessment. Appellant contends that telephones are real property and

subject to taxation pursuant to Real Property Tax Law (§ 102, subd. 12, par. [d]).[1]

The taxation of real property is authorized solely by statute. It is competent for the Legislature to determine that any property, including telephones, is real property for tax purposes (*People ex rel. Hudson Riv. Day Line* v. *Franck,* 257 N. Y. 69; *Herkimer County Light & Power Co.* v. *Johnson,* 37 App. Div. 257). But just as the Legislature may reasonably change the nature of property for tax purposes by statutory definition, it follows that if it fails to do so, property which by common acceptance is an article of personalty is free from assessment.[2] The issue which divides us is whether by using the word " appurtenances " in paragraph (d) of subdivision 12 of section 102 the Legislature has done so with respect to subscriber-owned telephones.

Looking to the statute (Real Property Tax Law, § 102) and mindful that the cases instruct us that tax statutes must not be extended by implication beyond the clear import of the language used, that they are to be construed most strongly against the government and in favor of the taxpayer (*Matter of Grumman Aircraft Eng. Corp.* v. *Board of Assessors,* 2 N Y 2d 500, 510) and that they must be given a practical construction and be interpreted as an ordinary person reading them would understand them (*Matter of New York Tel. Co.* v. *Ferris,* 257 App. Div. 415, 416, affd. 282 N. Y. 667), we affirm the trial court's

1. While we are not confronted with the problem in this case, because petitioners own both the building and the telephones, the assessment of telephone equipment will present some difficult clerical problems if appellant's position is correct. The real property tax is an in rem tax but if the telephone and the building are owned separately, the tax will be assessed on the owner personally. Presumably, tenants owning no real property but a single telephone would be assessed upon the tax rolls, for it is suggested that telephones should be separately assessed in the name of the owner of the equipment rather than the owner of the land or building (3 Opns. Counsel St. Bd. of Equal. Assessm. No. 27) (But see Real Property Tax Law, § 502, subd. 3 and *Matter of Doughty* v. *Loomis,* 9 A D 2d 574, affd. 8 N Y 2d 722; cf. Real Property Tax Law, § 102, subd. 12, par. [g]).

2. Certainly portable telephones meet all the standard criteria for personal property and it is a well-settled rule that in the absence of statute, installations of public utilities retain their character as personal property (*People ex rel. Glen Tel. Co.* v. *Failing,* 57 Misc. 308, affd. 130 App. Div. 888, affd. 195 N. Y. 618; *People ex rel. New York Edison Co.* v. *Feitner,* 99 App. Div. 274, affd. 181 N. Y. 549; *Matter of City of New York* [*Fort Greene Houses*], 266 App. Div. 795, affd. 291 N. Y. 788). The courts in the *Canough* and *Ferris* cases (*infra*) were confronted with the question of whether telephones could be considered real property because there were " appurtenances ", the inherent qualities of the property as personalty notwithstanding.

determination that subscriber-owned telephones are not taxable as real property.

By common definition realty includes land and the buildings and improvements affixed to the land. The statute includes that definition and expands it with respect to utility property, for it is obvious that in the cases of telephone companies a substantial portion of the assets of the taxpayer consists of distribution lines and supporting apparatus. Thus, paragraph (d) of subdivision 12 provides that real property shall include, for assessment purposes: "Telephone and telegraph lines, wires, poles and appurtenances; supports and inclosures for electrical conductors and other appurtenances, upon, above, and under ground". The telephone company is liable for taxes assessed upon real property, not only as such property is traditionally conceived but also with respect to the various components which make up the supply system and the special franchises required for the system's operations (Real Property Tax Law, § 102, subd. 12).

In interpreting similar statutory language (former Tax Law, § 2, subd. 6) the courts have held that the telephone company may be assessed and taxed for the central office equipment of the company, even though detachable or movable (*Matter of New York Tel. Co.* v. *Ferris, supra*), and also for the company's station apparatus, installations and private branch exchanges whether located on company-owned realty or privately-owned realty (*Matter of New York Tel. Co.* [*Canough*], 290 N. Y. 537). The cases went no further than deciding that company-owned telephone property is taxable to the company whether situated on company property or private property. The taxability of subscriber-owned telephones was not decided for the simple reason that subscribers were not permitted to own telephones at that time.[3] It was not until a Federal tariff revision that subscribers were permitted to purchase and own a variety of stylized

---

3. Prior to 1967 a Federal tariff provided that all equipment connected with telephone company facilities must be furnished by the telephone company.

Tariff FCC No. 132:

"7. Unauthorized attachments or Connections:

"No equipment, apparatus, circuit or device not furnished by the Telephone Company shall be attached to or connected with the facilities furnished by the Telephone Company, whether physically, by induction or otherwise, except as provided in this Tariff. In case any such unauthorized attachment or connection is made, the Telephone Company shall have the right to remove or disconnect the same; or to suspend the service during the continuance of said attachment or connection or to terminate the service." (See, also, *Carter* v. *American Tel. & Tel. Co.*, 365 F. 2d 486, cert. den. 385 U. S. 1008.)

private telephones or independently designed office systems. For the same reason it can hardly be said that the Legislature addressed itself to the question before us when it adopted the statute several years earlier.

In the *Canough* and *Ferris* cases the courts were able to hold in favor of taxability because, in the language of the statute, the telephone was clearly appurtenant to the company's property. An appurtenance is something annexed to or belonging to a "more important" thing and not having an independent existence (*Harris* v. *Elliott*, 10 Pet. [35 U. S.] 25; Bouvier's Law Dictionary). It has been held that the word "appurtenances" in this statute refers to those things owned by the utility which are appurtenant to the system as an integrated whole (*Matter of New York Tel. Co.* v. *Ferris, supra,* p. 419).

It is argued in the dissenting opinion that telephones should be taxed consistently and that since they have been held taxable to the telephone company because appurtenant to the company's lines, they must also be taxable to private subscribers. There are legitimate distinctions which arise because of different ownership, however, and which justify this different tax treatment. The company-owned telephone may or may not be a permanent installation and it is part of an integrated and extensive communication system which is necessarily defined by referring in a general way to its various parts. The privately-owned telephone is removable and may be taken from the premises by its owner. It is not a part of the realty any more than is the occupant's furniture or appliances.

The concept of treating similar property differently for tax purposes, depending on the status of the owner or his use of the property, is not new (see, e.g., Real Property Tax Law, § 102, subd. 12, pars. [f] and [g]; Real Property Tax Law, art. 4; *People ex rel. Dexter Sulphite Pulp & Paper Co.* v. *Hughes,* 246 N. Y. 35) and the discrete classification of electric utility equipment, depending on whether it is located on public or private property, has been recognized for years (*People ex rel. Glen Tel. Co.* v. *Failing,* 57 Misc. 308, affd. 130 App. Div. 888, affd. 195 N. Y. 618; *People ex rel. New York Edison Co.* v. *Feitner,* 99 App. Div. 274, affd. 181 N. Y. 549). The dissenter would hold the property taxable solely because it has a use related to taxable real property and is located proximate to the company's lines. This is not a proper criterion for finding the instrument an appurtenance. Similar examples may be recited endlessly. Is the telephone book or the personal number file on the desk beside the telephone or which may be attached to the tele-

phone instrument an appurtenance? Is the reading lamp real property because connected to electrical conductors or is the kitchen range real property because connected to the gas line? In a period during which the public enjoys the benefits of the most sophisticated scientific, medical and business equipment for transmitting data by connections to telephone lines, the implications of the ruling suggested in the dissent are far too profound to be accomplished by a mechanical application of the holding of the *Canough* case. To do so would clear the way to reclassification for tax purposes of hundreds of types of such equipment solely because telephone facilities are used to transmit the data produced.

There is no statute from which it can reasonably be inferred that the Legislature has decided to classify privately-owned telephones as real estate for tax purposes and we decline to extend the ruling of the *Canough* case to do so.

The judgment should be affirmed.

CARDAMONE, J. (dissenting). I dissent from the majority who hold in this case that telephones are taxable to a public utility because they are real property but that telephones are not taxable to private subscribers because they are personal property. Such a shifting concept with respect to the taxability of property — to be determined solely upon who owns the property — may have appeal but does not find any support in the Real Property Tax Law or the decided cases.

The majority argue that there are legitimate distinctions justifying different tax treatment based upon the alleged fact that the company-owned telephone is "part of an integrated and extensive communication system" while the privately-owned telephone, because it "may be taken from the premises by its owner", is not. Such distinctions, impliedly based upon removability, do not exist in fact[1] and would, at any rate, be distinctions without a difference. It is true that at common law the distinction between real and personal property depended upon mobility (47 N. Y. Jur., Property, § 9). Common-law classifications are not relevant in this case, however, since the Legislature has established by section 102 of the Real Property Tax

---

1. Company-owned telephones are generally removed from the premises of a private subscriber when the subscriber quits the premises. The privately-owned telephone is also removable, but may not legally be plugged into or connected with the telephone company lines without use of prescribed company-owned protective and signalling devices furnished by the telephone company. Both may be removed, but neither is legally usable as a telephone in any other place until devices furnished by the company are installed, and, therefore, are necessarily part of an integrated system.

Law its own definition of real property for tax purposes. That statute provides that real property shall include for assessment purposes: "Telephone and telegraph lines, wires, poles and appurtenances; supports and inclosures for electrical conductors and other appurtenances, upon, above, and under ground". (Real Property Tax Law, § 102, subd. 12, par. [d].)

The city assessors of Syracuse assessed petitioner's privately owned telephone receivers as real property for tax purposes. In my view, such classification was proper since these telephone instruments are "appurtenances" within the statutory definition. In *New York Telephone Co.* v. *Ferris* (257 App. Div. 415, affd. without opn. 282 N. Y. 667), it was held that central office equipment owned by the telephone company was properly assessable as real property despite the fact that it could be removed from the building without substantial injury to the realty (257 App. Div., at p. 419) because, as the court noted, common-law rules respecting mobility of fixtures must be forsaken in favor of the standard established in the Tax Law (257 App. Div., at p. 417). More significantly in *Matter of New York Tel. Co.* (*Canough*) (264 App. Div. 937, affd. *Per Curiam* 290 N. Y. 537), the New York Telephone Company petitioned for a review of a tax assessment by the City of Syracuse upon telephone station apparatus, station installations and private branch exchanges owned by the company but located upon premises of telephone subscribers. Relevant to the instant case is the description of station apparatus defined by the referee in *Canough* as consisting of " the ordinary telephone instruments of various types which either sit upon a desk or table, or are fastened to the wall by four screws, together with the bell box and the cord connecting the two " (Record, vol. I, p. 229, *Matter of New York Tel. Co.* [*Canough*], 290 N. Y. 537). Among the telephones included in this description is the so-called " combined set-portable " which could be moved from room to room and was connected to a jack box by means of a male-type plug. This device is indistinguishable from the telephone instrument sought to be exempted from taxation in the instant case.[2] *Canough* was heard initially before a referee who concluded that the decision in *Ferris* (*supra*) was " broad enough to cover the present situation and leaves little or no doubt that the various classes of property in question including station apparatus come within the statutory definition of ' real property ', and are taxable as

---

2. This is clearly revealed by a photograph marked exhibit 7A contained in Record, vol. II, *Matter of New York Telephone Co.* (*Canough*), 290 N. Y. 537.

such " (Record, vol. I, pp. 235–236). The determination to sustain the tax assessment was affirmed in this court (264 App. Div. 937), and ultimately by the Court of Appeals (290 N. Y. 537). In *Canough* the Court of Appeals refused to relieve the telephone company from taxation upon " station apparatus " (essentially the telephone instruments themselves) by excising such equipment from remaining utility-owned taxable property such as " station installations " and " private branch exchanges " despite a specific opportunity to do so.[3]

Although the majority further recognize that " it is competent for the Legislature to determine that any property, including telephones, is real property for tax purposes " it, nonetheless, virtually assumes the result it reaches that telephone instruments are outside the statutory definition by characterizing such equipment as an article of personalty " by common acceptance ". Moreover the majority's attempted analogies to the electric reading lamp and kitchen range — which, it is noted, are connected to such clearly taxable items of real property as " electrical conductors " and gas lines — are not particularly apt inasmuch as the Legislature has not elected to define as realty items which are appurtenant to mains or pipes for conducting electricity or gas (Real Property Tax Law, § 102, subd. 12, pars. [f], [g]).

Further, reliance by the majority upon *People ex rel. Dexter Sulphite Pulp & Paper Co. v. Hughes* (246 N. Y. 35) to support its view that property is treated differently for tax purposes depending upon ownership is appropriate only where there is a statute which permits such different classifications, as was the fact in the *Dexter Sulphite* case but which is not the fact in the instant case. Similar majority reliance upon *People ex rel. New York Edison Co. v. Feitner* (99 App. Div. 274, affd. 181 N. Y. 549) for the differing classification of electric utility equipment dependent on whether it is located on public or private property is also misplaced because such differentiation has been permitted for years only because the Real Property Tax Law definitions specifically provide for such a distinction (Real Property Tax Law, § 102, subd. 12. par. [e]). In brief, these cases provide no support for the majority but only reaffirm the principle that when considering the taxability of property under a tax statute

---

3. The referee, upon request, specifically found that of the $700,000 tax assessment levied against the New York Telephone Company, station apparatus, station installation and private branch exchanges accounted for 44 per cent, 30 per cent and 26 per cent respectively. Record, vol. I at 257, *Matter of New York Telephone Co. (Canough)*, 290 N. Y. 537.

the definitions contained within the statute itself, and these alone, determine the question.

Ultimately the resolution of this case must depend upon the definitional scope of the term "appurtenances" as it is used in section 102 (subd. 12, par. [d]) and strictly speaking the meaning attributed to this term cannot be made dependent upon such extrinsic considerations as ownership or common-law classification. The sole inquiry before this court is whether as a matter of statutory definition the telephone instruments involved herein are appurtenant to telephone lines, wires and poles; a question which I feel constrained to conclude was specifically and affirmatively answered by the Court of Appeals in *Canough (supra)*. Only when it is determined that telephones are embraced within the definition of realty does the issue of ownership arise, and only then for the purpose of assessing the appropriate levy.

In the final analysis, it is the telephone owner-user who must, of course, pay whatever real property tax is levied on company-owned telephone instruments. The mere fact that the lawyer-owners in this case (and it could be any business or professional group) find it economically advantageous to purchase their own telephones should not serve as a reason, i.e., private ownership, to gain for them an exemption from this self same tax which all other users of company-owned phones are required indirectly to pay. The tax paid upon "station apparatus" is substantial. In *Canough,* for example, it amounted to 44% of the utility's total tax assessment.[4] If the Legislature chooses to exempt telephone instruments from real property taxes, then — all users alike should be equally exempt. It does not appear equitable to me, however, to apply the tax law as the majority today do to impose a tax on most users and exempt others solely because the latter elect to own the ordinarily taxable telephone instrument.

Accordingly, I dissent and vote to reverse the judgment and dismiss the petition to review the tax assessment.

WITMER, J. P., MOULE and MAHONEY, JJ., concur with SIMONS, J.; CARDAMONE, J., dissents and votes to reverse the judgment and dismiss the petition in an opinion.

Judgment affirmed with costs.

---

4. See n. 3, *supra.*