AT&T Information Systems, Inc., Respondent-Appellant, v City of New York, Appellant-Respondent, and State of New York, Intervenor-Appellant.

First Department, April 12, 1988

## APPEARANCES OF COUNSEL

*Ira G. Greenberg* of counsel *(James M. Keneally, Martin Eisen, James P. Kratochvill* and *Richard A. Sinton,* with him on the brief; *Summitt Rovins & Feldesman,* attorneys), for respondent-appellant.

*Judith R. Greenwald* of counsel *(Edith I. Spivack* and *Joseph I. Lauer* with her on the brief; *Peter L. Zimroth, Corporation Counsel,* attorney), for appellant-respondent.

*Harvey M. Berman* of counsel *(Lawrence S. Kahn* with him on the brief; *Robert Abrams, Attorney-General,* attorney), for intervenor-appellant.

*Robert T. Bloom* of counsel *(Edward T. O'Brien, County Attorney,* attorney), for County of Nassau, *amicus curiae.*

## OPINION OF THE COURT

ROSENBERGER, J.

Plaintiff AT&T Information Systems, Inc. (Information Systems), a Delaware corporation licensed to do business in this State, was formed in 1982 to sell and lease telephones and related equipment, pursuant to the Federal Communications Commission (FCC) directives effecting deregulation of the telephone and telecommunications industry. Plaintiff sought, and won, a judgment declaring Laws of 1984 (ch 895) null and void, insofar as it purports to tax certain of plaintiff's property, on the ground that it violates the equal protection guarantees of both the United States and New York Constitutions. Information Systems contends, and Supreme Court agreed, that chapter 895 arbitrarily classifies its customer premises equipment (CPE) as real property and imposes a tax thereon, while leaving similar property, owned by taxpayers who in all relevant respects are indistinguishable from plaintiff, untaxed.

Information Systems is the wholly owned subsidiary of American Telephone & Telegraph Company (AT&T) which, prior to deregulation, provided 85% of the telephone service in the United States through its network of affiliated companies known as the Bell System. Until 1967, telephone companies were required to provide "end-to-end" or "bundled" service to subscribers who were prohibited from purchasing discrete components of the service from different suppliers. Only equipment supplied by the telephone company could be attached or connected to telephone company facilities and telephone rates reflected the cost, including maintenance, of using the equipment necessary to originate, transmit and receive calls.

The lines, wires, poles and "appurtenances" which made up the integrated telephone system were classified as real property for which the telephone company was taxed pursuant to RPTL 102 (12) (d) even though, under common law, the equipment was a removable fixture which would be classified as personalty *(Matter of New York Tel. Co. v Ferris,* 257 App Div 415 [4th Dept 1939], *affd* 282 NY 667 [1940]; *Matter of Crossman Cadillac v Board of Assessors,* 60 AD2d 842 [2d Dept 1978], *affd* 44 NY2d 963), and even though it was located on the customer's premises *(Matter of New York Tel. Co. [Canough],* 264 App Div 937 [4th Dept 1942], *affd* 290 NY 537 [1943]).

Beginning in 1969, subscribers were permitted to connect equipment purchased or leased from nontelephone companies to telephone company facilities. The change in ownership of the CPE raised an issue as to whether subscriber-owned equipment was taxable as real property as it had been when owned by the telephone company. In *Matter of Crystal v City of Syracuse* (47 AD2d 29 [1975]), the Fourth Department held, and the Court of Appeals affirmed (38 NY2d 883 [1976]), that privately owned telephones and equipment were not real property under RPTL 102 (12) (d). Although this provision does not refer to ownership of the subject property, because at the time of its enactment subscribers were not permitted to use their own telephone equipment, the court reasoned that the tax distinction based on ownership was legitimate in view of the legislative intent to expand the definition of realty with respect to utility property *(supra,* 47 AD2d, at 31). *(See also, Matter of Manhattan Cable TV Servs. v Freyberg,* 49 NY2d 868, 869 [1980]; *Matter of Quotron Sys. v Irizarry,* 48 NY2d

795, 797 [1979]; *Matter of Crossman Cadillac v Board of Assessors, supra,* 44 NY2d, at 964.)

Since 1969, the telephone industry has been restructured by a series of FCC rulings and the settlement of a Federal antitrust action against the Bell System Companies. The FCC concluded in 1978 that CPE was essentially no different from other types of electrical appliances *(see, Implications of Tel. Indus.'s Primary Instrument Concept,* 68 FCC2d 1157 [1978]) and, thereafter, it ordered that all CPE be provided on a deregulated, competitive basis separate and distinct from regulated telephone service. *(See, Report & Order,* 95 FCC2d 1276 [1983].)

Deregulation of CPE was ordered in two stages: "new" CPE (i.e., equipment that was neither in inventory nor installed on a customer's premises) became available for sale or lease beginning in 1983; "embedded" CPE (i.e., equipment that was in inventory or installed on a customer's premises as of January 1, 1983) became available beginning in 1984. The Bell System's operating companies, which were engaged in regulated monopoly activities, were required to form a separate, nonoperating subsidiary to sell or lease their CPE if they wished to participate in the deregulated CPE market. Thus, plaintiff was formed as a vehicle through which AT&T could market its CPE.

Pursuant to the consent judgment entered in the antitrust action, AT&T was also required to divest itself by January 1, 1984, of the 22 local operating subsidiaries which formed the Bell System *(United States v American Tel. & Tel. Co.,* 552 F Supp 131 [D DC 1982], *affd sub nom. Maryland v United States,* 460 US 1001 [1983]; *United States v Western Elec. Co.,* 569 F Supp 1057 [D DC], *affd sub nom. California v United States,* 464 US 1013 [1983]). The FCC ordered the operating subsidiaries to transfer all embedded CPE to AT&T which was then permitted to transfer this CPE to Information Systems for sale or lease to telephone subscribers. Embedded CPE could not be removed during 1984 unless the customer so requested and plaintiff was required to maintain this CPE during that time.

Although the FCC had permitted immediate deregulation of new CPE, it determined that rate regulation for embedded CPE should continue for a two-year transition period to pre-

vent abrupt price increases.* Moreover, the transfer of CPE owned by independent telephone companies which were not part of the Bell System to separate marketing subsidiaries was deferred until December 31, 1987 (see, *Procedures for Implementing Detarrifing,* 99 FCC2d 354 [1984]).

These changes in the telecommunications industry threatened a substantial loss of revenue to New York State inasmuch as the embedded CPE, taxable as real property when owned by the telephone utility, would become untaxed personalty in the hands of a nonutility. New York City, for example, received approximately $14,500,000 in revenue annually from the embedded CPE which had a taxable assessed value of $160,000,000. As an interim measure to prevent this revenue loss, and until the economic and fiscal consequences of deregulation could be evaluated the State Legislature enacted Laws of 1984 (ch 895). The new law provided that telephone equipment which was taxable in 1983 and thereafter transferred to an owner engaged in the business of selling or leasing such equipment, "notwithstanding whether such transferee is considered a utility, shall be deemed taxable" pursuant to RPTL 102 (12) (d).

■ Information Systems refused to pay defendant the real property tax assessed on its embedded CPE and brought this action challenging the validity of chapter 895. Plaintiff also sought certification of a defendant class comprising all of the State's real property tax assessing units. However, Supreme Court, which granted plaintiff's request for declaratory relief, refused to certify the defendant class, relying "on the integrity of local taxing units to abide by judicial rulings". The State of New York was granted leave to intervene in defendant's appeal (CPLR 1012 [b]; Executive Law § 71), and plaintiff has cross-appealed from that portion of the judgment which denied certification of the defendant class. We agree with the findings and conclusions of Supreme Court and would affirm the judgment now before us.

The Legislature, in adopting chapter 895, recognized that

---

* The transitional plan imposed a nationwide price ceiling for each type of embedded CPE. Information Systems was free to charge any price below the national ceiling. If, however, it wished to increase prices which were below that ceiling it could only do so in scheduled increments over the two-year period. In New York, where the regulated rates for embedded CPE exceeded the maximum, the prices offered by Information Systems beginning in 1984 were lower than the rates charged for this equipment by New York Telephone in 1983.

section 102 (12) (d) would no longer apply to embedded CPE in the hands of Information Systems, a nonutility. Chapter 895 expands the definition of taxable realty by adding a new, dual classification based upon the status of the property (embedded CPE which was taxable as utility property in 1983) and the owner's status as a vendor or lessor of such property. Plaintiff, which in 1984 was the only vendor-lessor of this former utility property, contends that this new classification arbitrarily discriminates by treating Information Systems differently from all other owners of such property and from all other CPE suppliers.

While the State enjoys very broad discretion in the exercise of its taxing power *(Allied Stores of Ohio v Bowers,* 358 US 522, 526 [1959]; *Nashville, Chattanooga & St. Louis Ry. v Browning,* 310 US 362, 368-369 [1940]; *Matter of Long Is. Light. Co. v State Tax Commn.,* 45 NY2d 529, 535 [1978]; *Shapiro v City of New York,* 32 NY2d 96, 103 [1973]), the constitutional guarantee of equal protection under the law forbids invidious discrimination or palpably arbitrary distinctions among taxpayers *(Lehnhausen v Lake Shore Auto Parts Co.,* 410 US 356, 360 [1973]; *Foss v City of Rochester,* 65 NY2d 247, 256-257 [1985]). Although the Equal Protection Clause imposes no strict rule of equality, a tax classification "must rest upon some ground of difference having a fair and substantial relation to the object of the legislation" *(Royster Guano Co. v Virginia,* 253 US 412, 415 [1920], cited in *Allied Stores of Ohio v Bowers, supra,* at 527). Thus, a statutory classification may discriminate based upon a reasonable distinction or policy difference *(supra,* at 528; *Trump v Chu,* 65 NY2d 20, 25 [1985]).

Defendant maintains that chapter 895 is a valid legislative enactment designed to temporarily preserve the status quo. Perpetuation of the tax after transfer of the property to plaintiff was justified, according to defendant, because, notwithstanding the change of ownership, the function of the property remained unchanged. The embedded CPE owned by Information Systems remained "de facto part of an end-to-end telephone system".

It is, however, undeniable that the embedded CPE purchased from plaintiff by a telephone subscriber is also part of an end-to-end telephone system, as is the new telephone equipment leased by a subscriber from any one of plaintiff's competitors. Yet in neither instance is such property, which is functionally indistinguishable from plaintiff's property, subject

to taxation. The issue then is whether the statutory discrimination between owners of functionally identical property is palpably arbitrary or reasonably related to achievement of a legitimate State purpose.

In *Matter of Crystal v City of Syracuse* (47 AD2d 29, *supra),* the court held discrimination based on the property owner's status reasonable in light of the legislative objective of RPTL 102 (12) (d) to expand the definition of taxable utility property. This difference in tax treatment was warranted, the court explained, because "[t]he telephone company is liable for taxes assessed upon real property, not only as such property is traditionally conceived but also with respect to the various components which make up the supply system and the special franchises required for the system's operations" *(supra,* 47 AD2d, at 31).

■ Information Systems, however, enjoys no special franchise which would justify treating its property as realty under the expanded definition of section 102 (12) (d). Neither plaintiff nor its parent company is engaged in regulated monopoly activity. As Justice Stecher noted in his well-reasoned opinion, "the imposition of certain restrictions on Information Systems to protect the market place from the possibility of sudden price increases during a transition period is not comparable to the pervasive regulation by the FCC and state and public service commissions over a common carrier utility". As a regulated monopoly, the telephone company derived special benefits from its exclusive ownership of all the components of telephone service. It does not appear that plaintiff enjoys any particular benefits which would warrant treating its property differently from that of other CPE owners or vendors.

Defendant contends that Information Systems acquired a dominant market position when the Bell System Companies' embedded CPE was transferred to it. Although this transfer gave Information Systems a very substantial market share, Information Systems is but one of many suppliers in a highly competitive market which includes a myriad of firms, among them such large corporations as Sears, GTE and IBM. Unlike the telephone utility which may pass on to the consumer real property assessments on company-owned equipment *(Matter of Crystal v City of Syracuse, supra,* at 36 [Cardamone, J., dissenting]), Information Systems cannot do so in a competitive market for comparable, if not completely fungible products. As one competitor among many, plaintiff derives no special benefit from ownership of this CPE which would justify an

assessment on its property exclusively. Chapter 895 is, therefore, arbitrary in imposing a discriminatory burden on plaintiff.

■ Inasmuch as the Attorney-General has appeared, as required by Executive Law § 71, and has had an opportunity to be heard in this action to determine the constitutionality of Laws of 1984 (ch 895), we can see no reason for certification of the defendant class.

Accordingly, the judgment of Supreme Court, New York County (Stecher, J.), entered December 30, 1986, should be affirmed, without costs.

KUPFERMAN, J. P., ROSS, ELLERIN and SMITH, JJ., concur.

Order and judgment (one paper) of the Supreme Court, New York County, entered on December 30, 1986, unanimously affirmed, without costs and without disbursements.