■ In the Matter of ASTORIA GAS TURBINE POWER, LLC, Appellant, v TAX COMMISSION OF THE CITY OF NEW YORK et al., Respondents. [788 NYS2d 417]—

In a proceeding pursuant to Real Property Tax Law article 7 to review certain real property tax assessments, the petitioner appeals from (1) an order of the Supreme Court, Queens County (Golia, J.), dated March 10, 2003, which denied its motion for partial summary judgment on the issue of whether its equipment was misclassified as class three utility real property and should be reclassified as class four commercial property and granted the cross motion of the Tax Commission of the City of New York and the New York City Commissioner of Finance for partial summary judgment on the issue of misclassification, and (2) an order of the same court dated October 7, 2003, which denied its application to sign an order to show cause.

Motion by the respondents, inter alia, to dismiss the appeal from the order dated October 7, 2003, on the ground that it is not an appealable paper. By decision and order on motion of this Court dated March 19, 2004, that branch of the motion which was to dismiss the appeal from the order dated October 7, 2003, on the ground that it is not an appealable paper was held in abeyance and referred to the Justices hearing the appeal for determination upon the argument or submission thereof.

Upon the papers filed in support of the motion, and the papers filed in opposition thereto, and upon the argument of the appeal, it is,

Ordered that the motion is granted and the appeal from the order dated October 7, 2003, is dismissed on the ground that no appeal lies from an order denying an application to sign an order to show cause (*see* CPLR 5701); and it is further,

Ordered that the order dated March 10, 2003, is reversed, on the law, the petitioner's motion for partial summary judgment is granted, the respondents' cross motion for partial summary judgment is denied, and the respondents are directed to reclassify the petitioner's class designation upon the 2001-2002 assessment roll in accordance herewith; and it is further,

Ordered that one bill of costs is awarded to the petitioner.

In May 1996 the Public Service Commission of the State of New York (hereinafter the PSC) issued an opinion mandating the restructuring of the electric utility industry within the State (*see* 1996 NY PSC [Op No. 96-12]). Among the goals of the reorganization was increased competition and deregulation within

the industry, with an eye to greater consumer choice and an overall reduction of energy rates (*see* 1996 NY PSC [Op No. 96-12]; *see also Matter of County of Westchester v Helmer,* 296 AD2d 68 [2002]; *Matter of Energy Assn. of N.Y. State v Public Serv. Commn. of State of N.Y.,* 169 Misc 2d 924 [1996], *affd* 273 AD2d 708 [2000]). As a result, on July 21, 1998, the PSC approved, subject to certain conditions, the plan of Consolidated Edison Company of New York (hereinafter Con Ed) to divest about two thirds of its New York City, or "in-City," fossil-fueled electric generating capacity to unregulated third parties and an unregulated affiliate (*see Public Serv. Commn. Order Authorizing the Process for Auctioning of Generation Plant,* Case 96-E-0897 [July 21, 1998]). In 1999 NRG Energy, Inc., the petitioner's parent company, purchased one of Con Ed's power plants located in Astoria, Queens. In authorizing the transfer of Con Ed's electrical generating facilities to the petitioner and other independent power producers, the PSC ruled that they would be accorded "light regulation" under the Public Service Law and exempted these wholesale generators of electricity from PSC regulation relating to the retail sale of electricity, as they were to be subject to the competitive wholesale generation market forces which the PSC did not regulate (*see Matter of Consolidated Edison Co. of N.Y., Order Approving Transfer of Generating Facilities & Making Other Findings,* Case 96-E-0897 [July 28, 1999]; *Matter of Consolidated Edison Co. of N.Y., Order Approving Transfers of Generating Facilities & Making Other Findings,* Case 96-E-0897 [June 8, 1999]; *Matter of Carr St. Generating Sta., LP,* Case 98-E-1670 [Apr. 23, 1999]; *Matter of AES E. Energy Order Providing for Lightened Regulation,* Case 99-E-0148 [Apr. 23, 1999]). In addition, the Federal Energy Regulatory Commission (hereinafter the FERC) granted the petitioner, as a company offering electrical power exclusively for sale at wholesale rates, status as an "exempt wholesale generator" under the Public Utility Holding Company Act of 1935, exempting it from certain federal regulations intended for monopoly utilities (*see* 15 USC § 79z-5a [e]).

The petitioner commenced this proceeding pursuant to Real Property Tax Law article 7 challenging, inter alia, the classification of its power plant as "[u]tility real property" (RPTL 1801 [c]) and consequent designation as class three property (*see* RPTL 1802 [1]) on the City's 2001-2002 assessment roll. The Supreme Court denied the petitioner's motion for partial summary judgment on the issue of whether its equipment was misclassified as class three utility property and should be reclassified as class four commercial property, and granted the respondents' cross motion for partial summary judgment on the issue of misclassification.

The petitioner contends that because it shares none of the common characteristics of a utility and because the price at which it sells its electricity on the competitive wholesale generation market is not set by the PSC or other regulatory agency, its power plant is not "utility real property" within the meaning of RPTL 1801 (c). Therefore, the petitioner argues, its power plant should not have been designated as class three property. The City, on the other hand, contends that power plants always have been designated as class three property and that while the PSC does not supervise the rates that the petitioner charges for its electricity on the wholesale market, the petitioner is still subject to PSC regulation with respect to matters such as reorganizations, enforcement, investigation, safety, reliability, and system improvement. We agree with the petitioner and therefore hold that the petitioner's power plant should be reclassified as class four property.

Under article 18 of the Real Property Tax Law, New York City's real property is divided into four classes: classes one and two include all residential property, class three includes "utility real property," and class four includes all other commercial property (see RPTL 1801, 1802). RPTL 1801 (c) defines "[u]tility real property," in pertinent part, as "the real property . . . of persons and corporations, subject to the supervision of the state department of public service . . . or any other regulatory agency of the state or federal government, used in the generation . . . of . . . electricity."

"[T]he construction given statutes and regulations by the agency responsible for their administration, if not irrational or unreasonable, should be upheld" (Matter of Howard v Wyman, 28 NY2d 434, 438 [1971]; see Matter of New York State Assn. of Life Underwriters v New York State Banking Dept., 83 NY2d 353, 359-360 [1994]; Matter of Colt Indus. v New York City Dept. of Fin., 66 NY2d 466, 470-471 [1985]). "Where, however, the question is one of pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent, there is little basis to rely on any special competence or expertise of the administrative agency" (Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459 [1980]; see also Lorillard Tobacco Co. v Roth, 99 NY2d 316, 322 [2003]). "In such a case, courts are 'free to ascertain the proper interpretation from the statutory language and legislative intent'" (Seittelman v Sabol, 91 NY2d 618, 625 [1998], quoting Matter of Gruber [New York City Dept. of Personnel—Sweeney], 89 NY2d 225, 231-232 [1996]). The question of what "subject to the supervision of the state department of public service . . . or any other regulatory agency" means in

RPTL 1801 (c) may be resolved by consideration of the statutory language, design, and purpose (*see e.g. Matter of Gruber [New York City Dept. of Personnel—Sweeney], supra*). Accordingly, the City's construction of the statute is not entitled to deference. This is especially so since it appears that the City merely continued the property's historical designation as class three property without regard to the statutory language.

"It is fundamental that a court, in interpreting a statute, should attempt to effectuate the intent of the Legislature" (*Patrolmen's Benevolent Assn. of City of N.Y. v City of New York,* 41 NY2d 205, 208 [1976]; *see also Longines-Wittnauer Watch Co. v Barnes & Reinecke,* 15 NY2d 443, 453 [1965], *cert denied sub nom. Estwing Mfg. Co. v Singer,* 382 US 905 [1965]). As the clearest indicator of legislative intent is the statutory text, the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof (*see Majewski v Broadalbin-Perth Cent. School Dist.,* 91 NY2d 577, 583 [1998]). In ascertaining the purpose and applicability of a statute, it is proper to consider the legislative history of the act, the circumstances surrounding the statute's passage, and the history of the times (*see* McKinney's Cons Laws of NY, Book 1, Statutes § 124). Application of these principles leads to the conclusion that the City's broad construction of the statutory language is contrary to the legislative intent.

When article 18 of the RPTL was enacted in 1981 (L 1981, ch 1057), electric utilities subject to the supervision of the PSC, such as Con Ed, were vertically-integrated monopolies owning substantially all of the electricity generating, transmission, and distribution facilities. These public utilities had many advantages over the general business community, including the right of eminent domain, the use of public property, special franchises or public contracts, and relative freedom from competition. Clearly, the Legislature's use of the "supervision" clause in RPTL 1801 (c) was intended to distinguish the property owned by public utilities from nonutility property (*see New York Steam Corp. v City of New York,* 268 NY 137 [1935]; *New York R.T. Corp. v City of New York,* 303 US 573 [1938]).

In arguing that the petitioner's power plant is "utility real property," the City emphasizes one characteristic—that the property the petitioner owns is a power plant that generates electricity. Relying on that fact, the City argues that the petitioner's power plant comes within the definition of "utility real property" because power plants have always been so classified for real property tax purposes. However, the City's construction ignores the operative language of RPTL 1801 (c) distinguishing utility property from nonutility property.

The City further argues that the petitioner's power plant comes within the definition of "utility real property" because the petitioner remains subject to PSC and FERC regulation. However, the limited degree of regulation by the PSC does not render the petitioner a public utility. Moreover, the localized market mitigation measures approved by the PSC and FERC, which were imposed upon the petitioner and other in-City wholesale generators, were developed to prevent the exercise of generation market power in New York City during the transition period and do not involve the intense rate supervision imposed upon traditional electric utilities by the PSC (*see AT&T Info. Sys. v City of New York*, 137 AD2d 7 [1988], *affd for reasons below* 73 NY2d 842 [1988]).

To accept the City's broad construction of the statutory definition of "utility real property" to include in class three the property of non-utilities such as the petitioner would produce a result not intended by the Legislature (*see Matter of United Parcel Serv. of N.Y. v Joseph*, 272 App Div 194 [1947], *affd* 297 NY 1004 [1948]; *Matter of 320 W. 37th St. v McGoldrick*, 281 NY 132 [1939]; *Matter of Merchants Refrig. Co. v Taylor*, 275 NY 113 [1937]). Moreover, to the extent that there is any ambiguity in the statutory definition of "utility real property," it must be construed most strongly in favor of the taxpayer and against the taxing authority (*see Matter of Manhattan Cable TV Servs., Div. of Sterling Info. Servs. v Freyberg*, 49 NY2d 868, 869 [1980]; *Matter of Orange & Rockland Util. v City of Middletown Assessor*, 269 AD2d 451 [2000]; *Matter of KIAC Partners v Cerullo*, 260 AD2d 381, 384 [1999]). Thus, we find that the petitioner's power plant is not "[u]tility real property" within the meaning of RPTL 1801 (c).

The City's argument that reclassifying power plants owned by non-utilities such as the petitioner as class four property would lead to disparate treatment of like properties owned by utilities such as Con Ed has already been rejected by the Court of Appeals (*see New York Steam Corp. v City of New York, supra*) and the United States Supreme Court (*see New York R.T. Corp. v City of New York, supra*). Accordingly, the petitioner's motion for partial summary judgment should have been granted, and the City's cross motion for partial summary judgment should have been denied. Prudenti, P.J., Florio, Schmidt and Fisher, JJ., concur.