OPINION OF THE COURT
Kenneth R. Fisher, J.
*472 When the City implemented a revaluation, it included on its 2004 final assessment rolls a value assigned to all of Frontier’s real property (excluding plant). As part of the revaluation, the City assessed intrabuilding network cable, which includes telecommunication wiring located solely within a customer’s premises or building. Contending that this intrabuilding network cable is properly recorded and accounted for as being within a customer’s premises pursuant to the Federal Communications Commission’s (FCC) uniform system of accounts for telecommunication companies (47 CFR 32.2426), and contending further that section 32.2426 merely is a present version of 47 CFR former 31.232 — station connections, petitioner maintains that the City should not have included the value of such cable in its assessment because, under the relevant regulations and statutes, such cable constitutes “station connections” pursuant to Real Property Tax Law § 102 (12) (d) and (i).
Real property is subject to real property taxation unless specifically exempted by statute (RPTL 300) and statutes exempting real property from taxation are strictly construed against the parties seeking an exemption. (Matter of City of Lackawanna v State Bd. of Equalization & Assessment of State of N.Y., 16 NY2d 222 [1965].) On the other hand, unless by reason of the statute a property is defined as real property, it is deemed personal property and therefore not taxable (Herkimer County Light & Power Co. v Johnson, 37 App Div 257 [4th Dept 1899]), and “to the extent that there is any ambiguity in the statutory definition of [‘taxable real property’], it must be construed most strongly in favor of the taxpayer and against the taxing authority.” (Matter of Astoria Gas Turbine Power, LLC v Tax Commn. of City of N.Y., 14 AD3d 553, 558 [2d Dept 2005] [bracketed material quoting Matter of Orange & Rockland Utils. v City of Middletown Assessor, 269 AD2d 451, 452 (2d Dept 2000)]; see Matter of Manhattan Cable TV Servs., Div. of Sterling Info. Servs. v Freyburg, 49 NY2d 868, 869 [1980].) In connection with telecommunications property, real property is defined by RPTL 102 (12) (d) and (i):
“(d) When owned by a telephone company all telephone and telegraph lines, wires, poles, supports and inclosures for electrical conductors upon, above and underground. For purposes of this paragraph the term ‘realproperty’ shall not include station connections and the term ‘telephone company’ shall mean a company subject to regulation by the public service commission which provides, to the general *473 public within its local exchange area, non-cellular switched local exchange telephone service at the points of origination and termination of the signal
“(i) When owned by other than a telephone company as such term is defined in paragraph (d) hereof, all lines, wires, poles, supports and inclosures for electrical conductors upon, above and underground used in connection with the transmission or switching of electromagnetic voice, video and data signals between different entities separated by air, street or other public domain, except that such property shall not include: (A) station connections; (B) fire and surveillance alarm system property; (C) such property used in the transmission of news wire services; and (D) such property used in the transmission of news or entertainment radio, television or cable television signals for immediate, delayed or ultimate exhibition to the public, whether or not a fee is charged therefor.” (Emphasis supplied.)
Petitioner wholly fails to establish as a matter of law that the intrabuilding network cable in question is exempt from real property taxation as a “station connection.” Prior to deregulation in the mid-1980s telecommunication wire from the telecommunication company’s (AT&T) plant to the customer’s telephone in the customer’s premises was owned by the telecommunications company and appropriately subject to real property tax. After deregulation, the ownership question with respect to such wire was broken down into several categories, but certainly not the three broad categories urged upon the court in this case. Petitioner outlines the following categories: (1) outside plant, (2) intrabuilding plant, and (3) customer premises and owned wiring. The intrabuilding network cable drawn into question in this case is conceded to be that portion from the so-called cross over point for the customer’s building interior, extending throughout the internal portions of the building, in either fiber optic or wiring mode, to a point called “the am phenol or 66 block.” (Affidavit of Mark Todd ¶ 3.) Frontier urges that it owns this intrabuilding network cable, that it is not a part of the customer’s building or structure, that it is constructed in such a manner as to be easily removable from the building without doing damage to the structure, and that it routinely adds or replaces additional intrabuilding network cable without affecting the structural integrity of the building. *474 The key point, however, is that intrabuilding network cable or wire is on the company’s side of the demarcation point. (47 CFR 68.3, formerly 47 CFR 68.3 [p], as it existed in 1986.)
Prior to deregulation, RPTL 102 (12) (d) and its predecessor statutes defined telecommunication real property as lines, wires, poles, and “appurtenances.” The term appurtenance was defined to include the wire beginning at the termination of the outside plant through and including the customer’s actual telephone, “even though, under common law, the equipment was a removable fixture which would be classified as personalty, and even though it was located on the customer’s premises.” (AT&T Info. Sys. v City of New York, 137 AD2d 7, 9 [1st Dept 1988], affd without op 73 NY2d 842 [1988] [citations omitted]; see also, Matter of Crystal v City of Syracuse, Dept. of Assessment, 38 NY2d 883 [1976], affg on op below 47 AD2d 29, 31 [4th Dept 1975] [“company-owned telephone property is taxable to the company whether situated on company property or private property”].)
After deregulation, RPTL 102 (12) (d) was amended to exclude from the definition of telecommunications real property “station apparatus,” “station connections,” and “private branch exchanges.” (L 1985, chs 71, 72, 463; L 1987, ch 416.) The legislative history provides that these terms, in particular “station connections,” encompass the “same type of property which was subject to real property taxation prior to [the AT&T] divestiture in accordance with the public service commission’s system of accounts, regulations and rulings, and applicable judicial decisions.” (L 1985, ch 71, § 1.) Although the 1985 amendments expired in 1986, the exclusions were continued in Laws of 1987 (ch 416) virtually in haec verba, with the effect that enactment thereof “continues the non-taxable status provided in the 1985 legislation [L 1985, chs 71, 72, 463] . . . for station connections such as drop and block and customers’ premises wiring.” (Senate Introducer Mem in Support of L 1987, ch 416, 1987 NY Legis Ann, at 150.) Petitioner agrees, however, that the only question presented is whether intrabuilding network wire or cable is “station connections” within the meaning of section 102 (12) (d).
Contrary to the affidavit provided by respondents, the New York State Office of Real Property Services issued a counsel’s opinion in 1985 which held that the term “station connections” was derived from the FCC uniform system of accounts, then 47 CFR 31.232 (since repealed and replaced by 47 CFR 32.2321), *475 which permitted covered entities to amortize the “original cost of installing items of station apparatus and the original cost of inside wiring and cabling.” The relevant provisions of the FCC uniform system of accounts were incorporated into the New York State Public Service Commission (PSC) uniform systems of accounts (16 NYCRR former 221-234, as recognized in 5 Ops Counsel SBEA No. 10 [May 12, 1975]). Accordingly, the State Board of Equalization and Assessment (SBEA) determined that the statutory term “station connections” was a term of art in the telecommunications field such that there is no ambiguity in RPTL 102 (12) (d) and (i) as it is applied to drop and block wires, and that therefore such property is exempt from real property taxation. (8 Ops Counsel SBEA No. 43 [Oct. 4, 1985].) Presumably, SBEA’s counsel would similarly conclude that the statute is unambiguous insofar as it is applied to “customers’ premises wiring.” (L 1987, ch 416 [bill summary].) The question presented in this case, however, is whether the statute is unambiguous as applied to the intrabuilding network wire or cable that is the subject of the assessment, and these article 7 petitions.
Petitioner places great emphasis on the regulatory history of divestiture, particularly that portion relevant to inside wiring as that term has been used by the FCC. This complicated history, in which a portion of 47 CFR former 31.232 (“Station Connections”) was deregulated, was rather nicely summarized as follows:
“First, the FCC directed that future inside wiring costs should be expensed and that embedded investment in unamortized inside wiring should be amortized over a ten-year period. First Report and Order, 85 F.C.C.2d 818 (1981). Subsequently, the FCC detariffed new intrasystem wiring and concluded that embedded intrasystem wiring would be addressed separately. Final Rule, 48 Fed.Reg. 50,543 (1983). In that same rule, it concluded that intrasystem wiring should be recorded in account 232. Thereafter, the FCC determined that intrasystem wiring should not be removed from regulated service because it could have an adverse effect on competition and on users. Report and Order, 95 FC.C.2d 1276 (1983). The FCC later issued an order distinguishing between simple and complex inside wiring. Second Report and Order, 59 Rad. Reg.2d (P & F) 1143 (F.C.C. 1986). In the Second Report and Order, *476 the FCC redefined complex inside wiring and detariffed the maintenance of such wiring effective January 1, 1987. It also ordered the relinquishment of ownership with respect to inside wiring recorded in account 232 concurrent with reaching the point of full amortization or zero net investment. Finally, in 1986, the FCC revisited the relinquishment requirements and ordered that the telephone companies could not require customers to purchase inside wire that had been fully amortized nor could they charge customers for the use of such wiring but that the companies could collect maintenance fees on an untariffed basis provided the companies used the accounts provided for unregulated activities. Memorandum Op. and Order, 1 F.C.C.R. 1190 (1986).” (Harris Corp. v Johnson, 711 So 2d 526, 528 n 1 [Fla Sup Ct 1998].)
A fuller history of the deregulation of inside wiring is provided in National Assn. of Regulatory Util. Commrs. v Federal Communications Commn. (880 F2d 422, 425-427 [DC Cir 1989] [overturning only that aspect of the FCC deregulation orders which preempted state regulation of inside wiring]).
Petitioner states repeatedly throughout its motion papers that intrabuilding network wire or cable is included in the FCC’s concept of station connections, but there is no support for this proposition, and indeed the available evidence clearly indicates otherwise. As early as 1981, the FCC distinguished between the concepts of inside wiring, intrasystem wiring, and intrabuilding or house wiring. (Matter of Amendment of Part 31, Uniform Sys. of Accounts for Class A & Class B Tel. Cos. of Commns. Rules & Regulations, 85 FCC2d 818 [FCC Docket No. 79-105, First Report and Order 1981].) As a full reading of docket No. 79-105 of the FCC decisions makes clear (the citations of which are too numerous to set forth here), the deregulation of “station connections” refers to “costs that are currently capitalized in account 232, and consists of the original cost of inside wiring and cabling, and the cost of installing or connecting items of station apparatus[,] [generally, . . . including] the drop and block wires.” (First Report and Order, 85 FCC2d 818, 818 1Í 20.) According to the FCC’s use of these terms in 1982: “Inside cablings are restricted to small cables used in station installations instead of wires, such as those running from wall outlets of floor terminals to the station apparatus, and to cables used in installing small private branch exchanges.” (85 FCC2d 818 at *477 H 20 n 4.) By contrast, “[t]he cost of other inside cables, including riser and distributing cables in buildings, which by their physical character, method of installation, and permanence constitute house cables, is chargeable to account 242.1, ‘Aerial cable.’ ” (Id.) Thus, in 1982, the FCC proposed to amend 47 CFR 31.232 to revise Note A, incorporating this quoted language. Separately, section 31.242:1 was proposed to be amended by revising Note A to that section, as follows: “House cables are considered to be extensions of aerial cable plant[,] . . . [and] do not include the inside wires extending from terminal boxes of house cables to subscribers’ stations which are included in account 232.” (First Report and Order, 85 FCC2d 818, Appendix.) These revisions, however, carried forward language contained in the 1956 revision of the uniform system of accounts, except that the relevant Note for section 31.242:2 was at that time Note D. (See 21 Fed Reg 7446, 7450 [Sept. 28, 1956].)
By the time the FCC published its notice of proposed rule-making on the subject (47 Fed Reg 44770 [1982]), the term house cables was replaced with the concept of “intrabuilding network cable,” and was distinguished from the term “intrasystem wiring,” the latter of which referred to “cable or wire used to connect station system components on a customer’s premises to one another.” (47 CFR former 31.232.) The house or intrabuilding network cable was not proposed to be deregulated or detarriffed. As explained at 47 Fed Reg 44770, 44773 (1Í 23), “if a portion of the intrasystem wiring requires the use of the regulated network house cable (intrabuilding network cable), it could only be offered by a regulated carrier on a tariffed basis.” (Emphasis supplied.) Moreover, “Intrabuilding cable is the cable installed within the same building, excluding the network terminating wire, on the telephone company’s side of the demarcation point.” (47 Fed Reg at 44774 1Í 25 n 13.) The FCC’s final rule on the subject, Detariffing of Customer Premises Equipment and Customer Provided Cable/Wiring (48 Fed Reg 50534), carried this distinction forward, and made clear that “[n]othing in our proposal would change the tariff status of house cable on the company’s side of the demarcation point.” (48 Fed Reg at 50541.) Later, in Matter of Western Union Corp. v Southern Bell Tel. & Tel. Co. (5 FCCR 4853, 4853 n 2 [July 24, 1990]), the FCC confirmed this view:
“Such telephone company-installed intrabuilding circuits are commonly referred to as ‘house cable’ or *478 ‘riser cable.’ See 47 C.F.R.§ 32.2426. It is cable in subscriber buildings that runs through, e.g., various floors, and is located on the telephone company’s side of the demarcation point. This particular type of facility was not detariffed by the Commission’s Order in Detariffing of Customer Premises Equipment and Customer Provided Cable/Wiring, 48 Fed.Reg. 50534 (1983). That portion of the facilities that run from the house cable to the demarcation point should be recorded as ‘Other Terminal Equipment Expense’. See 47 C.F.R. § 32.6362. The Detariffing Order affected the wire on the customers’ side of the demarcation point” (emphasis supplied).
Accordingly, in 1985 when RPTL 102 (12) (d) was amended to exempt station connections from the definition of taxable real property, the FCC did not consider intrabuilding network cable or wire to be within the definition of station connections targeted for deregulation, but instead maintained the tariff on it.
Similarly, the PSC followed suit. In 1982, 16 NYCRR former 232 was amended to require the station connections account to be separated into two accounts entitled “Station Connections— Inside Wiring,” and “Station Connections — Other,” which followed the directive in the FCC First Report and Order cited above. (See 16 NYCRR former 232 [B] [eff no later than July 1, 1982].) Note A to former section 232 also distinguished “riser and distributing cables in buildings, which by their physical character, method of installation, and permanence constitute house cables,” and directed that costs associated therewith be “chargeable to account 242.1, Aerial Cable.” Furthermore, 16 NYCRR former 242.1, Note A provided:
“House Cables are considered to be extensions of aerial cable plant. They do not include the inside wires extending from terminal boxes of house cables to subscribers’ stations which are included in account 232 or account 605 (effective July 1, 1982), or the cables for subscribers’ private branch exchange switchboards which are included in account 232 or account 605 (effective July 1, 1982), or account 234, as appropriate.”
Accordingly, the PSC was as early as 1982 and certainly in 1985 observing the FCC’s distinction between inside wire on the customer’s side of the demarcation point and intrabuild *479 ing network cable or house wire on the company’s side. A fortiori, intrabuilding network cable or house wire was not then considered station connections by the PSC, was not deregulated, and could not have been within the contemplation of the Legislature when RPTL 102 (12) (d) was amended in 1985, and subsequently reenacted effective 1987, to exempt station connections from the definition of real property subject to taxation.
A court may search the record and grant summary judgment to a nonmoving party “with respect to a cause of action or issue that is the subject of the motions before the court.” (Dunham, v Hilco Constr. Co., 89 NY2d 425, 430 [1996].) The court searches the record and grants summary judgment dismissing the petitions, but only insofar as they are premised on the erroneous view that intrabuilding network cable or wiring is “station connections” within the meaning of RPTL 102 (12) (d).